The opinion of the Court was delivered by
Inglis, J.
The nSotion for a new trial rests upon two grounds. One of these alleges a defect in the indictment, and consequent error of the presiding Judge in charging the jury that the indictment is sufficient in law for the case. It is said that according to the evidence, Branford, the deceased, was killed by a party of men (among whom were the prisoners) engaged at the time in a riot, and that the indictment ought, therefore, to have charged “ a riotous homicide.” There is no such separate offence as this. The only distinctions of homicide known to the reprobation of our law, in its practical administration, are murder and manslaughter. The circumstance, that a riot was in progress at the time, and the killing occurred in the prosecution of such riot, does not in law distinguish the homicide either in kind - or degree. It is supposed that the contrary was not intended to be affirmed by this appeal. The complaint is rather, that the offence here charged, to wit, murder, is not stated with the requisite certainty to meet the case made. The rules of criminal plead-, ing do not require that, in the description of the offence, intended to be charged, all the attending circumstances, which *226 happen to distinguish the particular instance from others of the same offence, shall be set out in detail. Nor, although the fact of the prisoner’s guilty connection with the act which consummated the offence must be averred, is it required that the circumstances which constitute the particular manner of such connection shall appear on the record. It is only necessary to state those facts which are in law essential to constitute the particular offence charged, as in this case, such as are legally essential to the crime of murder. The fact that the killing occurred in the prosecution of a riot in which the prisoner was a party, although, where the mortal injury was not, or is not proved to have been, inflicted directly by himself, very necessary to be proved in order to evince his guilty concurrence in the act, is not of the essence of the crime, and, therefore, need not be stated in the indibtment. All who are present concurring in a murder are principals therein, and the death, and the act which caused it, is, in l$w, the act of each and of all. There is no distinction in the regard of the law, in the degrees of their guilt, or the measure of their punishment, or the nature of their offence, founded upon the nearness or remoteness of their personal agency respectively. An indictment charging it as the act of a particular individual of the party will be well sustained by evidence that any other of them gave the fatal stroke, or that it was given by some one of them, though it does not appear by which. Mackalley's case, 9 Coke, 67, b; Sissinghurst House case, Halé, 461; 1 Russel Cr. 537. Here the indictment charges that the wounds, &e., which caused the death, were inflicted by the prisoners, and there is quite enough in the evidence to sustain the charge in its literal import. But, if-there were nothing of this kind, and it appeared, or the jury believed from the evidence, that some other one of the rioters, whether known or unknown, in the prosecution of their common purpose, inflicted the wounds, &c., the. charge in its legal meaning *227 would be well sustained. When it is said in the ■ books that besides the legal description of the offence, the manner of the death must be stated with exactness, it is only meant, that the particular mode of violence whereby the death was caused, whether by shooting, stabbing, beating, or striking, strangulation, poisoning, &e., must be set «forth, and not that the manner of the prisoner’s connection with the use of that violence shall appear on the record. The present is unquestionably a sufficient indictment for murder at common law. Nothing is omitted which it ought to contain. And there is entire legal conformity between the charge made therein, and the case presented by the evidence, whatever view it may be supposed to justify of the personal agency of the prisoners in the act of killing. The verdict finds that agency in the one way, or the other, directly or by concurrence.
The other ground of the motion complains that the presiding Judge did not, as requested, charge, that if the jury believed that the death was caused, not by “ bricks or stones cast or thrown ” by the prisoners, but “ by means of a crowd of persons beating and stamping the deceased on the ground or otherwise,” they should find the defendants “not guilty.” It may be the duty of the presiding Judge to present to the jury the various views that may be reasonably taken of the actual evidence, but it is certainly no part of his duty to go outside of the evidence to frame hypothetical cases or mere conjectures. The testimony in this case showed, beyond all shadow of controversy, that the death was caused by the “ wounds, bruises, fractures, and contusions,” inflicted on the head of the deceased by means of “ stones or bricks cast,” &c., or by “ kicking and stamping.” There was no possibility in the evidence of any “ otherwise.” And whether these wounds, &c., were inflicted by casting bricks, &e., or by stamping and kicking, the prisoners, either by their direct personal agency, or by their concurrence, in law inflicted them.
*228 .The rule requires that the particular mode of violence by which the death was produced “ or the species of killing” shall be correctly stated in the indictment. And if one species of killing, as hy poisoning, be charged, and the evidence shows a totally different species, as by shooting, stoning, strangling, &e., the variance will be fatal. And so in the cases cited from Moody C. C. 113, 139, where the killing was charged to have been by mortal blows, &c., given by the prisoner, or by his striking with k brick, and it was proved that the death resulted not directly from the prisoner’s blows, but from wounds or injuries on the head of the deceased caused by his falling beneath the prisoner’s blows on the’ ground, or on a brick or stone, the death being the immediate consequence not of the blow, but of the fall and resulting hurt occasioned thereby. But if the death resulted from “ wounds, fractures,” &c., caused by strokes or blows, it is not necessary that they should be proved to have been inflicted by means of the particular instrument charged in the indictment to have been used therein. Train and Hard Prec. 216; Wharton’s Or. Law — Homicide, 1059; Mackalley's case, 9 Coke, 67, a. If in this case the “wounds, fractures,” &c., which caused death were inflicted by kicking and stamping or either, the allegation of the indictment is in law as well sustained as if they had been proven to have been inflicted by casting and throwing stones or bricks. Nor is it material that the evidence shows the mortal injury to have been upon a different part of the head from that alleged in the indictment. The rules of pleading require that the indictment shall state a particular means or instrument of death, (or else that it was by means or instrument unknown, if the fact be so; Webster's case, 5 Cushing, 295,) and also a particular part of the body, as the locality of the mortal injury. But it is not necessary that the proof should literally correspond. If the mode of applying the violence be the 'same in kind as described, it is enough, though the weapon *229 or instrument used and the part of the body hurt be other than as averred.
Note. — The prisoner, Scipio Fraser alias John Williams, died in the goal of Charleston District, during the pendency of the appeal, as appears from the certificate of the Sheriff and the physician, filed with the record here.
The motion for a new trial is dismissed.
Dunkin, C. J., and Wabdlaw, A. J., concurred.

Motion dismissed.