22750

The STATE, Respondent v. Alvin OWENS, Appellant.
(359 S. E. (2d) 275)

Supreme Court

*Asst. Appellate Defenders Wanda P. Hagler* and *Tara D. Shurling, South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *William Edgar Salter, III,* Columbia, *Sol.*

*James O. Dunn* and *Asst. Sol. Debbie Owens,* Conway, *for respondent.*

Heard May 5, 1987.

Decided July 6, 1987.

GREGORY, Justice:

Appellant was convicted of murder in the commission of kidnapping and sentenced to death. We affirm.

## FACTS

The victim, Ernest Vereen, was seventy-two years old at the time of his disappearance on October 10, 1984. His body was never discovered. The State introduced the following evidence at trial:

1. Drag marks on the kitchen floor, an overturned basket, items scattered on the floor, and human blood stains on the bedsheets were found at the victim's residence.
2. The victim's eyeglasses and heart disease medication were left behind at his residence. His uncorrected vision rendered him legally blind and failure to take his prescribed medication was life-threatening.
3. The victim had a reputation in the community as a dependable and successful business man. He had pending business and appointments at the time of his disappearance.
4. The victim had a substantial amount of money and available credit to which he never attempted access after his disappearance.
5. After his disappearance, the victim never contacted his family or friends with whom he had maintained close personal relationships.
6. The victim's son received a ransom note demanding money and threatening to kill his father who was allegedly "under sedation." Similar drafts of this note in appellant's handwriting were found in his possession along with typewritten drafts.
7. Appellant picked up the ransom money at the location where the victim's son was directed to leave it by the kidnapper. Marked ransom money was found in appellant's possession.

8. Appellant's daughter sold the victim's onyx ring at appellant's direction. His son sold the victim's Gucci watch.

9. Grey/white head hairs found in the trunk of appellant's car were consistent with hairs from the victim's head and could not have been appellant's own hair.

In addition to this evidence, the State also produced testimony that appellant had made the following statements:

1. To Investigator Strickland: "When they told me you were from the Solicitor's office, I thought you all had found the body."

2. To inmate Causey: "They'll never charge me for murder, or convict me of murder because of where the body is, south of Myrtle Beach."

3. To inmate Burgess: "[I] shot Mr. Vereen with a .22."

4. To inmate Bearden: "Well, I'll be damn, Jim, my own son has told them where I buried the body."

## ISSUES

Appellant first asserts error in the trial judge's refusal to quash the indictment. The indictment alleged that appellant murdered Mr. Vereen "by means of forcibly sedating him and/or roughening him up by violently manhandling and beating him and/or depriving him of his life sustaining medication and/or mortally injuring him by means or instruments unknown." Appellant claims the State failed to give him sufficient notice of the charges against him.

An indictment is sufficient if the offense is stated ██ with sufficient certainty and particularity to enable the court to know what judgment to pronounce, the defendant to know what he is called upon to answer, and if an acquittal or a conviction thereon may be pleaded as a bar to any subsequent prosecution. *State v. Hardee*, 279 S. C. 409, 308 S. E. (2d) 521 (1983). Allegations may state in the alternative the manner and instrumentality of death, *State v. King*, 158 S. C. 251, 155 S. E. 409 (1930), or may state that death was caused by a means or instrumentality unknown, *State v. Jenkins*, 48 S.C.L. (14 Rich.) 215 (1867). This indictment was therefore sufficient.

Appellant also asserts a fatal variance between the indictment and the proof because the State did not prove the specific means of accomplishing the murder. The State did produce evidence tending to show that the victim could have been killed by any one of the means alleged in the indictment. There was no material variance.

Next, appellant claims that testimony of three state witnesses injected improper evidence of his prior criminal record because each witness stated he met appellant in prison.

This argument is without merit. There was no testimony regarding any prior bad act by appellant. The evidence produced at trial indicated only that appellant was in jail for the crime for which he was then being tried. The trial judge in an abundance of caution gave curative instructions not to consider appellant's residence adversely to him. Moreover, appellant himself introduced testimony by three inmates and a corrections officer who each stated he knew appellant in prison. There was no unfair prejudice to appellant from the testimony of the State's witnesses.

Next, appellant contends the evidence was insufficient to establish venue in Horry County. Venue in a criminal case need not be affirmatively proved if there is sufficient evidence from which it can be inferred. *Wray v. State,* 288 S. C. 474, 343 S. E. (2d) 617 (1986); *State v. Gethers,* 269 S. C. 105, 236 S. E. (2d) 419 (1977). The facts here indicate the victim was last seen at his residence in Horry County where there were found signs of a struggle. The ransom money was demanded and delivered in Horry County. This evidence is sufficient to establish venue in Horry County.

Next, appellant contends the trial judge erred in refusing his motion to change venue because of pretrial publicity. He claims the scope of voir dire allowed by the trial judge was inadequate to insure that jurors were not "subconsciously" influenced by extensive media coverage.

S. C. Code Ann. § 16-3-20(D) (1985) grants a capital defendant the right to examine jurors through counsel but does not enlarge the scope of voir dire permitted under § 14-7-1020 (1976). *State v. Patterson,* 290 S. C. 523, 351 S. E. (2d) 853 (1986). The trial judge properly exercised his discre-

tion to limit the scope of voir dire to an inquiry into juror bias or prejudice. *Id.*

If the denial of a change of venue is based on adequate voir dire, the trial judge's decision will not be disturbed absent extraordinary circumstances. *State v. Thompson,* 278 S. C. 1, 292 S. E. (2d) 581 (1982). There is no abuse of discretion in refusing to change venue if the trial judge has screened jurors to insure the defendant a fair trial. *State v. South,* 285 S. C. 529, 331 S. E. (2d) 775 (1985). The trial judge interviewed each juror to determine whether he or she could be impartial and received a satisfactory reply. Based on the trial judge's voir dire, refusal to change venue was not an abuse of discretion.

Moreover, it is the defendant's burden to demonstrate actual juror prejudice as a result of news accounts of the defendant's case. *State v. Goolsby,* 275 S. C. 110, 268 S. E. (2d) 31 (1980). Of the jurors actually selected to serve, one indicated he had seen one or two headlines, another had read one article, and two others vaguely recalled hearing something about the case. Appellant's mere assertion that the jurors could have been subconsciously affected by this media exposure is insufficient to show prejudice.

Next, appellant claims the trial judge erred in denying his motion for directed verdict because there was no proof of the corpus delicti of murder aside from appellant's alleged inculpatory statements.

The State must produce proof aliunde of the corpus delicti aside from the extrajudicial confession of the defendant. *State v. Johnson,* 291 S. C. 127, 352 S. E. (2d) 480 (1987); *In re Perkins,* 276 S. C. 378, 278 S. E. (2d) 781 (1981). The corpus delicti, however, may be proved by circumstantial evidence. *State v. Owens,* 291 S. C. 116, 352 S. E. (2d) 474 (1987). Other courts considering "no body" murder cases have allowed evidence of the victim's personal habits and relationships as circumstantial evidence from which an inference could be drawn that the victim's sudden disappearance was the result of death by a criminal act. *See, e.g., State v. Head,* 79 N. C. 1, 338 S. E. (2d) 908 (Ct. App. 1986); *Epperly v. Commonwealth,* 224 Va. 214, 294 S. E. (2d) 882 (1982).

The circumstantial evidence surrounding Mr. Vereen's sudden disappearance, considered with the unlikelihood of his voluntary departure as shown by his personal habits and relationships, is sufficient to establish the corpus delicti of murder or that the victim is dead by the criminal act of another. *See State v. Speights*, 263 S. C. 127, 208 S. E. (2d) 43 (1974). Appellant's inculpatory statements are not the only proof of the corpus delicti of murder and the case was properly submitted to the jury.

Next, appellant claims error in the admission of $66,000 in marked bills that was identified as ransom money. After his arrest, appellant's children found this money under a nightstand in his bedroom. An FBI agent was in the house at the time but did not participate in a search for this money. Appellant argues this evidence should have been suppressed as the fruit of an illegal search.

Appellant's argument has no merit. There was no ██ ██ motion to suppress this evidence. It was not seized as the result of a search by government officials and the fourth amendment protection therefore does not apply. *State v. McSwain*, 355 S. E. (2d) 540 (S. C. 1987); *State v. Sullivan*, 277 S. C. 35, 282 S. E. (2d) 838 (1981). Moreover, $9,000 of the ransom money was seized pursuant to a valid search warrant and introduced into evidence. There was no unfair prejudice to appellant from the admission of the remaining money. *See State v. Spodnick*, 292 S. C. 68, 354 S. E. (2d) 904 (1987) (no reversal of criminal conviction for non-prejudicial error in admission of evidence).

Next, appellant contests the admission of an in- ██ culpatory statement. While appellant was incarcerated awaiting trial, Investigator Strickland of the Solicitor's office came to the prison to serve him with a warrant for a different offense. Strickland testified that appellant said to him, "When they told me you were from the Solicitor's office, I thought you all had found the body." The trial judge found this statement was voluntary and admitted it into evidence. Appellant contends Strickland's visit was a form of "surreptitious interrogation" and the statement was inadmissible absent *Miranda* warnings.

This argument is without merit. Volunteered inculpatory statements that are not in response to custodial interroga-

tion are admissible without *Miranda* warnings. *State v. Koon*, 278 S. C. 528, 298 S. E. (2d) 769 (1982), *citing Rhode Island v. Innis*, 446 U. S. 291, 100 S. Ct. 1682, 64 L. Ed. (2d) 297 (1980). There is no evidence of interrogation by Strickland or anyone else at the time appellant made this spontaneous statement. Nor is there any evidence to show the functional equivalent of an interrogation in Investigator Strickland's words or conduct. *See Arizona v. Mauro,* ____ U. S. ____, 107 S. Ct. 1931, 95 L. Ed. (2d) 458 (1987). The trial judge properly allowed the statement into evidence for the jury's consideration of voluntariness.

Finally, appellant complains the trial judge erred in ■ instructing the jury that it must not be governed by sympathy in reaching its sentencing decision. This Court has resolved this issue against appellant, *State v. Plemmons*, 286 S. C. 78, 332 S. E. (2d) 765 (1985), and the United States Supreme Court has recently ruled in accord. *California v. Brown*, 479 U. S. ____, 107 S. Ct. 837, 93 L. Ed. (2d) 934 (1987).

We have conducted the sentence review required by ■ S. C. Code Ann. § 16-3-25 (1985), and conclude the death sentence was not the result of passion, prejudice, or other arbitrary factor and the evidence supports the jury's finding of the aggravating circumstance of kidnapping. The death sentence in this case is proportionate to the penalty imposed in *State v. Koon*, 285 S. C. 1, 328 S. E. (2d) 625 (1984), a case also involving murder in the commission of kidnapping. We find the death sentence neither excessive nor inappropriate in light of the circumstances of the crime and the character of appellant.

Accordingly, appellant's murder conviction and death sentence are

Affirmed.

NESS, C. J., and HARWELL, and FINNEY, JJ., and BRUCE LITTLEJOHN, Acting Associate Justice, concur.