290 S.C. 523 (1986)
351 S.E.2d 853
The STATE, Respondent
v.
Raymond PATTERSON, Jr., Appellant.
22644
Supreme Court of South Carolina.
Heard September 15, 1986.
Decided December 29, 1986.
*524 John D. Delgado, of Furr & Delgado, and the South Carolina Office of Appellate Defense, Columbia, for appellant.
Attorney Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr., and Carolyn M. Adams, Columbia, and Sol. Donald V. Myers, Lexington, for respondent.
Heard Sept. 15, 1986.
Decided Dec. 29, 1986.
CHANDLER, Justice:
Appellant, Raymond Patterson (Patterson), was convicted of murder, armed robbery and assault and battery of a high and aggravated nature. He was sentenced to death for the murder, and to 25 and 10 years' imprisonment for the other crimes.
We affirm the convictions, reverse the sentence of death and remand for resentencing.

FACTS
Mr. and Mrs. Matthew Brooks came from West Virginia to Lexington County on November 19, 1984, to attend the funeral of Mr. Brooks' sister-in-law. After checking into the Thunderbird Motel on St. Andrews Road near Irmo, they walked to a nearby restaurant for dinner. Before returning to the motel, they walked to a grocery store to buy fruit.
While putting the fruit in the trunk of their car, Patterson *525 approached Mrs. Brooks and demanded her purse. A struggle followed during which Mrs. Brooks' head was gashed and she was knocked to the ground. Mr. Brooks intervened and was shot at close range with a .45-caliber pistol which Patterson had stolen some two weeks previously.
There were at least three eye-witnesses to these events. Mr. Brooks died the next day at Richland Memorial Hospital.

ISSUES
1. Did the trial judge err in restricting Patterson's counsel in his voir dire of the jury?
2. Did the State exercise its peremptory strikes in a racially discriminatory manner?
3. Did the trial judge err in excusing two jurors based upon their philosophical opposition to the death penalty?
4. Did the trial judge err in refusing to admit the victim's medical report into evidence?
5. Did the trial judge err in refusing Patterson's motion for a mistrial upon the ground the State had failed to comply with a discovery request?
6. Did the trial judge err in refusing to admit into evidence at the sentencing phase a psychologist's report which expressed an opinion that Patterson could adapt to life in prison?

I. VOIR DIRE
Patterson's counsel sought to ask hypothetical questions of potential jurors on voir dire in an attempt to discover hidden biases or prejudices concerning the death penalty. The trial judge ruled the questions were improper. We agree.
S.C. Code Ann. § 16-3-20(D) (1985) grants a capital defendant the right to examine jurors through counsel. State v. Smart, 274 S.C. 303, 262 S.E. (2d) 911 (1980) (Smart I). This section, however, has been held not to enlarge the scope of voir dire delineated in S.C. Code Ann. § 14-7-1020 (1976). which permits inquiry into bias or prejudice. See State v. Smart, 278 S.C. 515, 299 S.E. (2d) 686 (1982), cert. denied, 460 U.S. 1088, 103 S.Ct. 1784, 76 L.Ed. (2d) 353 (1983) (Smart II).
*526 In Smart II, this court held "[t]he manner in which these questions are pursued and the scope of any voir dire beyond their bounds are matters of trial court discretion." 278 S.C. at 522, 299 S.E. (2d) at 690.
In State v. South, 285 S.C. 529, 331 S.E. (2d) 775, cert. denied, ___ U.S. ___, 106 S.Ct. 209, 88 L.Ed. (2d) 178 (1985), we expressly disapproved the use of hypothetical questions during voir dire:
South also contends the trial judge erred in refusing to permit defense counsel to ask the jurors hypothetical questions concerning the death penalty. Clearly, the questions would have been improper since the purpose of voir dire is to insure each juror can make a decision based on the evidence presented, rather than hypothetical evidence.
285 S.C. at 533-534, 331 S.E. (2d) at 778.
Thus, the trial judge had the authority, as well as the duty, to disallow the hypothetical questions. Patterson's exception is without merit.

II. PEREMPTORY STRIKES
Patterson contends the State exercised a peremptory challenge in a racially discriminatory manner, thereby denying his right to a representative jury and a fair trial guaranteed by the Sixth Amendment. He essentially argues there exists a pattern of discriminatory jury selection in Lexington County.
The method used in selecting the jury required that a designated number of jurors first be chosen from the general venire. These jurors were deemed "qualified," but were subject to peremptory challenge. The State exercised a peremptory challenge against the only black juror presented for final selection from this number. Defense counsel rated this juror as highly favorable to the defense. The Solicitor stated he had placed her in the same category as a white female against whom he also exercised a peremptory strike.
This court held in State v. Hawkins, 289 S.C. 482, 347 S.E. (2d) 98 (1986) that the rule enunciated in Batson v. Kentucky, 476 U.S. ___, 106 S.Ct. 1712, 90 L.Ed. (2d) 69 (1986) was not to be given retroactive effect in South Carolina. Accordingly, former law applies.
*527 Patterson failed to make a showing under Swain v. Alabama, 380 U.S. 202, 85 S. Ct 824, 13 L.Ed. (2d) 759 (1965) that there exists in Lexington County a systematic use of peremptory challenges against blacks over a period of time. Absent such a showing, peremptory challenges may be exercised for any reason or for no reason at all. See State v. Plath, 277 S.C. 126, 284 S.E. (2d) 221 (1981), appeal after remand, 281 S.C. 1, 313 S.E.(2d) 619, cert. denied, Arnold v. South Carolina, 467 U.S. 1265, 104 S.Ct. 3560, 82 L.Ed. (2d) 862 (1984).

III. EXCUSING JURORS BASED UPON OPPOSITION TO DEATH PENALTY
Patterson contends the trial court erred in excusing two jurors for cause. One stated she had an absolute philosophical opposition to the death penalty. The other, while perhaps less firm in her convictions, stated she was against the death penalty and did not think she could ever recommend imposing it.
In Lockhart v. McCree, 476 U.S. ___, 106 S.Ct. 1758, 90 L.Ed. (2d) 137 (1986), it was held that the Federal Constitution does not prohibit the removal for cause of prospective jurors whose opposition to the death penalty is so strong that it would prevent or substantially impair the performance of their duties at the sentencing phase of trial.
Both the jurors excused for cause in this case fall within the rule in Lockhart and were properly excluded.

IV. MEDICAL RECORDS OF VICTIM
Patterson sought to admit into evidence the medical records of the victim, Mr. Brooks, compiled at Richland Memorial Hospital. He proffered them through the testimony of the hospital's custodian of records. The State objected on the ground it could not cross-examine the makers of the records.
Patterson contends the records were admissible as an exception to the hearsay rule pursuant to the Uniform Business Records as Evidence Act, S.C. Code Ann. § 19-5-510 (1976). The trial judge reviewed the records and determined they were not admissible because they contained the physician's subjective opinions, not merely factual observations.
This court has held that the admission of records under § 19-5-510 does not extend to subjective opinions or judgments *528 included within the records. See Kershaw County Dept. of Social Services v. McCaskill, 276 S.C. 360, 278 S.E. (2d) 771 (1981); State v. Key, 277 S.C. 214, 284 S.E. (2d) 781 (1981). Patterson's failure to include the medical records in the transcript precludes a review of the trial judge's ruling.
Patterson offered the medical records to establish that the only injury to Mr. Brooks' head was the gunshot wound. He sought to refute Mrs. Brooks' testimony that Patterson had beaten her husband about the head prior to shooting him. This evidence, however, would have been cumulative to the testimony of the pathologist who performed the autopsy. On cross-examination, he testified there was no evidence Mr. Brooks had been beaten. Accordingly, the exclusion of the records, if error, was harmless beyond a reasonable doubt.

V. DISCOVERY REQUEST
On the morning of jury selection, the State informed Patterson's counsel that it had a tape of an interview with Mrs. Brooks made within 48 hours of the shooting. Patterson moved for a dismissal, or in the alternative for a mistrial, based upon the State's failure to comply with South Carolina Criminal Practice Rule 8. Patterson contends the delayed production of this tape prevented him from effectively cross-examining Mrs. Brooks.
Rule 8(a)(2) provides:

Information Not Subject to Disclosure: Except as provided [above] this rule does not authorize the discovery or inspection of ... statements made by prosecution witnesses or prospective prosecution witnesses provided that [(1)] after a prosecution witness has testified on direct examination, the court shall, on motion of the defendant, order the prosecution to produce any statement of the witness in the possession of the prosecution which relates to the subject matter as to which the witness has testified; and provided further that [(2)] the court may upon a sufficient showing, require the production of any statement of any prospective witness prior to the time such witness testifies. (Emphasis added).
*529 Counsel was permitted to listen to the tape before Mrs. Brooks took the stand for direct examination. By its clear terms Rule 8 was not violated. Moreover, the trial judge allowed counsel to delay cross-examination until the next day. Thereafter, Patterson introduced the tape into evidence and played it for the jury. Thus, any discrepancies between Mrs. Brooks' testimony and her tape were brought to the jury's attention and Patterson was not prejudiced by the delay.

VI. ADAPTABILITY TO PRISON LIFE
During sentencing phase the trial judge refused to permit a clinical psychologist to testify to her evaluation of Patterson relative to his future adaptability to prison life. By stipulation with the Solicitor, Patterson made the proffer in the form of a written report reciting Patterson's personality characteristics as constructed from a battery of psychological tests. The report concludes with the opinion that "Mr. Patterson would be expected to adapt successfully to living within a prison population were he given a life sentence."
The ruling of the trial judge constitutes reversible error under the recent case of Skipper v. South Carolina, 476 U.S. ___, 106 S.Ct. 1669, 90 L.Ed. (2d) 1 (1986). In Skipper the United States Supreme Court relied upon its earlier decisions of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed. (2d) 973 (1978) and Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed. (2d) 1 (1962).
The holdings in Lockett and Eddings did not involve, as here, a defendant's future adaptability to prison life as a mitigating circumstance. Rather, they addressed other factors in mitigation, evidence of which was disallowed.
In Lockett the Court struck down an Ohio statute which "did not permit the sentencing judge to consider, as mitigating factors, [the defendant's] character, prior record, age, lack of specific intent to cause death and her relatively minor part in the crime." In Eddings the Court reversed the sentence of death, holding the trial judge erred in excluding evidence of the 16-year-old defendant's "violent background."
While the holding in Eddings derived from the particular *530 mitigating factor presented in that decision, the Court construed Lockett in a broader dimension and, indeed, to require submission to the jury of any evidence proffered by a defendant in mitigation of the death penalty:
[We] conclude that the Eighth and Fourteenth Amendments require that the sentencer ... not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. [Emphasis by Court].
Eddings, 455 U.S. at 110, 102 S.Ct. at 874, 71 L.Ed. (2d) at 8, citing plurality opinion in Lockett, 438 U.S. at 604, 98 S.Ct. at 2964, 57 L.Ed. (2d) at 990.
In Skipper the Court reasoned:
1. That the prosecution may establish as an "aggravating factor" evidence that a defendant would in the future pose a danger to the community if not executed. See Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed. (2d) 929 (1976); Barefoot v. Estelle, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed. (2d) 1090 (1983). A defendant has a reciprocal right to present evidence that his probable future conduct would not pose danger if he were given a life sentence.
2. That consideration of a defendant's past conduct as indicative of his probable future behavior is an inevitable and not undesirable element of criminal sentencing. See Jurek, supra. Therefore, "the sentencer ... [may] not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." [Emphasis by Court]. See Eddings, supra.
The Court concluded that a capital defendant "is permitted to present any and all relevant mitigating evidence that is available." [Emphasis supplied]. Skipper, 106 S.Ct. at 1673, 90 L.Ed. (2d) at 9.
In Barefoot v. Estelle, supra, the United States Supreme Court held that psychiatric opinion testimony bearing upon a defendant's future dangerousness was admissible, stating:

*531 The suggestion that no psychiatrist's testimony may be presented with respect to future dangerousness is somewhat like asking us to disinfect the wheel. In the first place, it is contrary to our cases. 463 U.S. at 896, 103 S.Ct. at 3396, 77 L.Ed. (2d) at 1106.

* * *
Although there was only lay testimony with respect to dangerousness in Jurek, there was no suggestion by the Court that the testimony of doctors would be inadmissible. 463 U.S. at 897, 103 S.Ct. at 3397, 77 L.Ed. (2d) at 1107.
[T]he rules of evidence generally extant at the federal and state levels anticipate that relevant, unprivileged evidence should be admitted and its weight left to the fact finder, who would have the benefit of cross-examination and contrary evidence by the opposing party... [J]urors should not be barred from hearing the views of the State's psychiatrists along with the opposing views of the defendant's doctors. [Emphasis supplied]. 463 U.S. at 898-899, 103 S.Ct. at 3397, 77 L.Ed. (2d) at 1107-1108.
Similarly, this Court has held that psychiatrists may give opinion testimony as to a defendant's probable future dangerousness in capital cases. State v. Woomer, 278 S.C. 468, 299 S.E. (2d) 317 (1982), cert. denied, 463 U.S. 1229, 103 S.Ct. 3572, 77 L.Ed. (2d) 1413 (1983). In Woomer, we rejected the appellant's contention that psychiatric testimony concerning future dangerousness is not scientifically reliable, holding that the objection was addressed to the weight of the evidence and not to its admissibility.
We interpret Skipper to require that opinion testimony of psychiatrists and psychologists bearing on a capital defendant's future adaptability to prison life be admitted as "relevant mitigating evidence" of a defendant's character. As stated in Skipper, "evidence that the defendant would not pose a danger if spared (but incarcerated) must be considered potentially mitigating." 106 S.Ct. at 671, 90 L.Ed. (2d) at 7.
The State's principal thrust at oral argument was not directed to the admissibility of the psychologist's evaluation *532 but, rather, to the contention that the evidence would have been merely cumulative to the testimony of jailers and other witnesses. We reject this contention. The proffered testimony included scientific data and the opinion of an expert. Hence, it was qualitatively different from the lay witnesses' testimony of factual observations.
We are compelled to hold that exclusion of the testimony was error.

VII. EFFECT UPON PRECEDENT
We note the following concerning the United States Supreme Court's reversal of State v. Skipper, 285 S.C. 42, 328 S.E. (2d) 58 (1985).
We have no quarrel with the holding that testimony from lay witnesses is admissible on the issue of past conduct. Indeed, we so held in State v. Koon, 285 S.C. 1, 328 S.E. (2d) 625 (1984) (Koon II), cert. denied, 471 U.S. 1036, 105 S.Ct. 2056, 85 L.Ed. (2d) 329 (1985).
At Skipper's trial the court excluded opinion testimony of his wife, a lay witness, "as to whether he could make a good adjustment to prison life." Immediately thereafter Skipper's counsel advised the trial judge that he intended to call three additional lay witnesses concerning adjustment. Following further colloquy counsel inquired:
MR. DUSENBURY (Attorney for Skipper): So none of these witnesses will be permitted to testify?
THE COURT: I don't know what they are going to say but I am telling you they will not be permitted to testify about his adjustability to prison life. [Parenthesis supplied].
This Court interpreted the colloquy to indicate that lay testimony was being offered as an opinion of Skipper's future adaptability. However, the United States Supreme Court interpreted the proffer otherwise. The Court looked to an earlier statement of counsel that the witnesses would testify that Skipper "had made" a good adjustment, thus indicating the testimony would concern past factual observations. A full proffer of the testimony in camera would have resolved any doubt as to its nature.
In Skipper the United States Supreme Court does not hold *533 that state courts are prohibited from applying evidentiary rules to exclude incompetent opinion testimony of lay witnesses. To the contrary, there is a clear inference by the Court that such a limitation is valid.
It should be noted, further, that this decision overrules State v. Koon, 278 S.C. 528, 298 S.E. (2d) 769 (1982) (Koon I) insofar as it holds evidence of future adaptability to prison life is irrelevant and inadmissible.

CONCLUSION
We affirm Patterson's convictions, reverse the death sentence and remand for resentencing.
Affirmed in part; reversed in part and remanded.
NESS, C.J., and GREGORY and HARWELL, JJ., concur.
Acting Associate Justice BRUCE LITTLEJOHN, concurs.
Associate Justice ERNEST A. FINNEY, JR., not participating.