498 S.E.2d 642

**STATE of South Carolina, Respondent,**

v.

**Mekiel Letrel MITCHELL, Appellant.**

No. 24777.

Supreme Court of South Carolina.

Heard Feb. 17, 1998.

Decided April 6, 1998.

190

Tara Dawn Shurling, Columbia, for appellant.

Charles Molony Condon, Attorney General, John W. McIntosh, Deputy Attorney General, and Donald J. Zelenka, Assistant Deputy Attorney General, Columbia; and David Price Schwacke, Solicitor, Ninth Judicial Circuit, North Charleston, for respondent.

WALLER, Justice:

On appeal is Appellant Mekiel Letrel Mitchell's conviction of murder. We affirm.

## FACTS

At approximately 5:30 p.m. on December 16, 1995, Kenneth Raymond Judy ("Victim") was shot in the back of the head while driving in his truck. Appellant became a suspect when his car was found at the crime scene with a box of bullets in the seat. He presented an alibi defense, claiming he was not at the scene when the shooting occurred. He produced witnesses who testified he left the scene with a girlfriend around 5:10 p.m. and was with her until around 10:30 p.m.[1]

To counteract Appellant's defense, the State produced two eyewitnesses who testified they saw Appellant shooting at Victim's truck as it was driving away from him. Other witnesses testified they saw someone fitting Appellant's description in the vicinity of the crime scene after the shooting occurred. Another witness testified he was with Appellant all

---

1. Appellant did not testify.

day until 5:30 p.m., when Appellant borrowed his truck, claiming he was going out to buy cigarettes. A final State's witness testified Appellant had called him to request the witness provide him with a false alibi. Because the murder weapon was never found, ballistics and other forensic evidence was somewhat inconclusive.

## ISSUES

I. Did the trial judge err in refusing to order a recess of the trial?

II. Did the trial judge err in instructing the jury on the law of voluntary manslaughter?

III. Did the trial judge err in refusing to allow Appellant access to the criminal file of a State's witness, and in limiting Appellant's cross-examination of the witness? ·

IV. Is Appellant entitled to a new trial because the cumulative effect of trial errors deprived him of Due Process?

## DISCUSSION

### I. Trial Recess

Appellant argues the trial judge committed reversible error in refusing to allow a trial recess to accommodate his counsel's illness. We disagree. As with requests for a trial continuance, requests for a recess during trial are within the trial judge's discretion, and will be reversed on appeal only upon a showing of an abuse of that discretion. *State v. Durden,* 264 S.C. 86, 212 S.E.2d 587 (1975); *State v. Meyers,* 262 S.C. 222, 203 S.E.2d 678 (1974).

Appellant's trial counsel filed a pre-trial brief[2] stating counsel had "a condition of 'cluster-type' migraine headaches which is currently active. This condition is, for the most part, controlled by non-narcotic medication **and should not prevent the trial from going forward.**" He stated the condition might "result in some unusual requests such as requests that lighting [in] the courtroom be reduced or that there be a recess **for the purposes of taking medication.**" (emphasis supplied).

---

**2.** This brief was filed March 19, 1996. Appellant's trial was March 20–22, 1996.

No mention was made of counsel's condition until about 4:00 p.m. on the first day of trial. At this time, during a bench conference, the Solicitor, in trying to inquire into how long the judge wanted to work that evening, mentioned that "[counsel] is apparently not feeling too well." When the trial judge indicated he wanted to work until 5:30, counsel stated, "5:30 would be fine. But later I'm—I'm starting to get that headache problem that was mentioned in my brief." Trial proceeded and was concluded that day without incident.

The next day, at 9:15 a.m., counsel told the trial judge, "I put in the pre-trial brief the problem I have with migraine headaches. I woke up with a massive one this morning. **I'm good to go.** I have medication I take called Midrin, which is non-narcotic, I can take four in a day. **I'm at three.** When those run out, I'm going to have to go to narcotic painkillers." (emphasis supplied). The trial judge stated he was not inclined to "break down during the day ... [f]or any reason." He informed counsel he could let his associate finish trying the case "if something happens." When counsel pointed out his associate had "no knowledge of the case other than where the documents are," the judge stated, "I don't ever stop at three o'clock in the afternoon." Trial proceeded with no other mention of counsel's condition, with one exception. After the judge charged the jury in the late afternoon, counsel objected to part of it. Noting counsel did not object when the Solicitor requested the charge, the judge overruled the objection. Counsel responded, "Well, I've been suffering from a severe migraine headache all day **and I didn't think that I was having a problem.**" (emphasis supplied).

■ Based on this record, Appellant argues he is entitled to a new trial. Initially, this issue is procedurally barred because, while he indicated he might need a recess, counsel never actually requested one. *State v. Williams*, 303 S.C. 410, 401 S.E.2d 168 (1991) (issue not raised to and ruled on by the trial court is not preserved for appeal).[3]

---

3. Appellant asserts it would have been futile to have requested one because the trial judge stated they would work until 5:30 regardless. We find this argument unpersuasive under the facts of this case. This situation is similar to a motion *in limine* to exclude evidence. We have consistently held a ruling *in limine* is not final, and unless an objection is made at the time the evidence is offered and a final ruling procured,

■ In a similar vein, and largely because of the procedural problem, Appellant cannot show prejudice from the judge's ruling. *State v. Babb*, 299 S.C. 451, 385 S.E.2d 827 (1989) (denial of a motion for a continuance will not be disturbed absent an abuse of discretion **resulting in prejudice**). Appellant points to several alleged trial errors counsel made during the second day of trial, which he argues show counsel must have been impaired by his headache. Even assuming Appellant is correct that these incidents were trial errors (which we specifically decline to address), there is absolutely nothing in the current record to show a causal connection between them and counsel's health. At no time, even in his post-trial motion, did counsel ever state the point at which he became so impaired by his headache that he needed a recess. At no time did he state when (or if) his non-narcotic medication ran out and he was presented with the option of taking narcotic medication, having his assistant try the case, or proceeding himself with no medication. Even when he was trying to excuse his failure to object to a jury charge at the end of that day, counsel never stated he was actually impaired; to the contrary, he stated he did not think he was having a problem. *See State v. Williams*, 321 S.C. 455, 469 S.E.2d 49 (1996) (burden is on appellant to provide a sufficient record for review).

We find no reversible error.

## II.  *Voluntary Manslaughter*

■ Appellant next argues the trial judge committed reversible error in submitting the lesser included offense of voluntary manslaughter to the jury over his objection. We disagree. Any possible error would be harmless because the jury convicted Appellant of the greater offense of murder. *State v. Plyler*, 275 S.C. 291, 270 S.E.2d 126 (1980); *State v. Anderson*, 253 S.C. 168, 169 S.E.2d 706 (1969).

the issue is not preserved for review. *State v. Simpson,* 325 S.C. 37, 479 S.E.2d 57 (1996). The idea behind this rule is that events may occur after the preliminary ruling that could affect the judge's view of the issue. Here, the last representation the trial judge heard was that counsel was "good to go." We find counsel should have raised the issue at some point later if he really felt impaired.

*III. Criminal File/Limited Cross Examination*

Appellant next argues the trial judge violated *Brady v. Maryland*[4] in failing to require the Solicitor to provide its entire criminal file on Linda Erway, a State's witness in his case; or in the alternative, in refusing to inspect the file *in camera* to see if it contained any exculpatory material. Appellant further argues the judge's improperly limiting his cross-examination of Erway deprived him of a fair trial. We disagree.

Erway was an eyewitness to the shooting who originally gave police a statement which failed to implicate Appellant. She also failed to pick Appellant out of a police lineup. However, the week before trial, she changed her statement and identified Appellant for the first time as the shooter. Appellant wanted her criminal file to impeach her testimony at trial. It was his theory Erway changed her story because she had pending criminal charges against her, and either had a deal with the Solicitor's office or wanted to please them in the hopes of favorable treatment.[5]

■ As an initial matter, we find these issues are procedurally barred. Early on the first day of trial, counsel brought this issue up to the trial judge, stating he knew what the pending charges were but wanted the entire file. The Solicitor stated there was no agreement with Erway regarding her testimony. The trial judge ruled Appellant could ask Erway if she had pending charges, but could not "go into those specific charges." Appellant's counsel's response was, "Right." Because counsel acquiesced in the judge's limitation of his cross-examination, and made no other objections regarding wanting the criminal files, Appellant cannot now complain about this issue. *See, e.g., State v. Williams*, 303 S.C. 410, 401 S.E.2d 168 (1991) (issue not raised to and ruled on by the trial court is not preserved for appeal); *Ex parte McMillan*, 319 S.C. 331, 461 S.E.2d 43 (1995) (party cannot acquiesce to issue at trial and then complain on appeal).

In any event, we find no prejudice to Appellant on either issue.

4. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

5. Erway had fired the attorney she had hired to represent her on the pending charges because she could not afford him. This dismissal apparently occurred shortly before she changed her statement to police.

■ As a general rule, a trial court's ruling on the proper scope of cross-examination will not be disturbed absent a manifest abuse of discretion. This rule is subject, however, to the Sixth Amendment's guarantee of a defendant's right to a "meaningful" cross-examination.

[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which the jurors ... could appropriately draw inferences relating to the reliability of the witness."

. . .

[However, the Confrontation Clause does not] prevent a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, **trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination** based on concerns about, among other things, harassment, prejudice, confusion of the issues, witness' safety, or interrogation that is repetitive or only marginally relevant.

*State v. Smith,* 315 S.C. 547, 551–52, 446 S.E.2d 411, 414 (1994) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679–80, 106 S.Ct. 1431, 1435–36, 89 L.Ed.2d at 674, 683–84 (1986)).[6]

In *Smith,* the defendant, charged with murder, sought to impeach an eyewitness with pending criminal charges, which the trial judge disallowed. Finding "nothing in the record to indicate that the attempted cross-examination [was] improper,"[7] we held, "it appears that Smith's Sixth Amendment

---

**6.** Additionally, SCRE 608(c) provides that "Bias, prejudice or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced." To the extent Appellant argues his right to cross-examine Erway pursuant to this rule was infringed, we find no reversible error for the same reasons discussed *infra. See State v. Bell,* 302 S.C. 18, 393 S.E.2d 364 (1990) (to reverse a case based on erroneous exclusion of evidence, error and prejudice must be shown).

**7.** *See State v. Graham,* 314 S.C. 383, 385–86, 444 S.E.2d 525, 527 (1994) (cautioning bench that before a criminal defendant can be

rights have been violated." 315 S.C. at 552, 446 S.E.2d at 414. It is noteworthy that in *Smith* the judge had stopped the defendant's cross-examination only **after** the witness generally admitted to having pending charges, but before any more specific information was brought out. *Smith* indicates a defendant may have a right to question a potentially biased witness on more than just whether there are pending charges against the witness.

However, we find that to the extent Appellant was entitled to further question Erway,[8] any error is harmless. *See id.* (recognizing harmless error analysis applies to Sixth Amendment violations).

Whether such an error is harmless in a particular case depends upon a host of factors.... The factors include the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

*Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438, 89 L.Ed.2d at 686. Erway was not the only eyewitness to the shooting who implicated Appellant at trial. Furthermore, the judge did allow Appellant to question her about the pending charges. *See, e.g., Smith,* 315 S.C. at 552–53, 446 S.E.2d at 414 (finding any Sixth Amendment violation harmless in part because witness was impeached with general pending charges).

On direct, Erway testified she had been convicted three or four times for drug offenses. During cross, she readily admitted she was currently on probation for drug-related charges and was a recovering drug addict. She also admitted she had been recently charged with another criminal offense.[9] She

---

prohibited from engaging in cross-examination designed to show bias, "the record must clearly show that the cross-examination is somehow inappropriate").

**8.** *Smith* did not elaborate on how much detail is allowable or required. We likewise decline to address the proper scope of cross-examination on the present record.

**9.** Appellant knew the specific date of the charge and thus was able to show the jury how recent it was.

stated she fired her attorney two weeks before trial, and that she was not currently represented on the pending charge. She denied having made any deals with the Solicitor's office in exchange for her testimony. During closing argument, counsel argued his theory of Erway's motive to the jury at length. Therefore, under these facts, any error in limiting the scope of Appellant's cross-examination would not warrant reversal.

■ We also find no *Brady* violation occurred under the facts of this case.[10]  "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218. "[*Brady*] applies to impeachment evidence as well as exculpatory evidence." *State v. Von Dohlen*, 322 S.C. 234, 241, 471 S.E.2d 689, 693 (1996) (internal citations omitted). However, "Impeachment or exculpatory evidence is material **only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.**" *Id. See also State v. Penland*, 275 S.C. 537, 539, 273 S.E.2d 765, 766 (1981) (Under *Brady*, "the test is not whether the solicitor failed to reveal the information, but whether the omission deprived the defendant of a fair trial.") (internal quotation omitted); *Fradella v. Town of Mount Pleasant*, 325 S.C. 469, 479, 482 S.E.2d 53, 58 (Ct.App.1997) ("the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense...." "A defendant shows a Brady violation by demonstrating that 'favorable evidence could [have been presented] to put the whole case in such a different light as to undermine confidence in the verdict.'"). (internal citations omitted). Appellant was allowed to present facts and argument regarding Erway's motive to testify to the jury. We therefore find no reversible error.

---

**10.** Appellant knew not only that Erway had pending charges, but also knew what those charges were. In this sense, his asserted *Brady* violation is more limited than the error in limiting cross-examination. *See State v. Nance*, 320 S.C. 501, 466 S.E.2d 349 (1996) (*Brady* applies to undisclosed evidence held by the State).

## IV. Cumulative Error

Finally, Appellant argues the above-discussed issues on appeal, along with the following additional trial error, had a cumulative prejudicial impact that deprived him of a fair trial. We disagree.

Appellant argues the trial judge improperly refused to consider a written statement, allegedly made by one of the State's eyewitnesses, discovered after the jury began deliberating. We find this argument is without merit. First, the statement is not in the record on appeal and therefore this Court does not know exactly what information it contained. *See State v. Williams,* 321 S.C. 455, 469 S.E.2d 49 (1996) (burden is on appellant to provide a sufficient record for review).[11] In any event, it is clear from the evidence in the record that the judge did consider the statement in denying Appellant's post-trial motions.[12]

Finally, we find Appellant has suffered no prejudice warranting a new trial based on cumulative trial error. "As we have stressed on more than one occasion, the Constitution entitles a criminal defendant to a fair trial, not a perfect one."

---

**11.** Appellant argues the trial judge prevented him from making a proper record on appeal by refusing to make the statement an appellate exhibit. We disagree. When Appellant brought the statement to the judge's attention, the jury was still deliberating. At this time, Appellant asked that the statement be made an appellate exhibit. The judge refused to consider the issue at that time, but told defense counsel he would look into it after the jury reached a verdict. The judge stated he would allow defense counsel to put "anything you want to on the record" after the jury's verdict. The merits of the argument were considered during the post-trial motions hearing. Appellant never attempted to have the statement admitted at this hearing.

**12.** He found the statement, which apparently would have contradicted either the witness's police statement or his trial testimony, was of questionable probative value because it was unsworn, undated and unnotarized. He also found it was cumulative to other evidence produced at trial, specifically that the witness admitted on the stand that he made inconsistent statements.

*Van Arsdall,* 475 U.S. at 681, 106 S.Ct. at 1436, 89 L.Ed.2d at 684.

**AFFIRMED.**

FINNEY, C.J., TOAL, MOORE and BURNETT, JJ., concur.