564 S.E.2d 331

**The STATE of South Carolina, Respondent,**

v.

**Terry Lee GRACE, Appellant.**

**No. 3476.**

Court of Appeals of South Carolina.

Heard March 7, 2002.

Decided April 15, 2002.

Rehearing Denied June 19, 2002.

20

L. Morgan Martin and George M. Hearn, Jr., Conway, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Attorney General Charles H. Richardson and Senior Assistant Attorney General Harold M. Coombs, Jr., Columbia;  and Solicitor J. Gregory Hembree, Conway, for respondent.

CURETON, J.

Terry Lee Grace ("Grace") was convicted of the offense of lewd act on a minor and three charges of simple assault and battery upon the same minor.  Grace appeals his convictions arguing the circuit court erred in consolidating the four indictments for trial, and in limiting the testimony of his brother and the cross-examination of his ex-wife.  We affirm.

## FACTS

Grace and Julie Wilkinson Cowens ("Julie") were husband and wife and had custody and care of their fourteen-year-old

niece ("the niece") and fifteen-year-old nephew. During the early morning hours of October 17, 1997, Julie went into the niece's bedroom and did not see her. While searching for her, Julie entered the guest bedroom upstairs, where Grace frequently slept, to look for the niece. Julie pulled the bed covers off the bed, and discovered Grace lying naked in the bed with the niece, who was clad only in a tee shirt. Julie became enraged and asked Grace and the niece whether they had sexual intercourse. The niece responded they had, but Grace denied having sex with the niece.

Upon discovering Grace and the niece together in bed, Julie called 911 and told the operator what had occurred. The 911 operator notified the police who dispatched sheriff's deputies to the scene. The deputies arrested Grace. Lieutenant Hunt, the sexual assault investigator for the Georgetown County Sheriff's Department, investigated the allegations. Hunt asked the niece about the events of October 17 and also whether any similar prior events between the niece and Grace had occurred. The niece responded that they had engaged in sexual intercourse on two prior occasions, and that on October 17 Grace digitally penetrated her. Hunt examined the mattress that Grace and the niece were found lying on and noticed what she thought were old blood stains on the mattress. She cut out the stained portion of the mattress and had it tested to see if the stain matched the niece's DNA. The DNA test results were inconclusive. Also Hunt arranged for the niece to be examined by a doctor. The results of this examination were also inconclusive.

Grace was charged and separately indicted on three counts of criminal sexual conduct with a minor under the age of sixteen, and one count of lewd act on a minor. The jury convicted Grace on the lewd act on a minor charge and three counts of simple assault and battery. This appeal followed.

## LAW/ANALYSIS

### I. Joinder Issue

Grace argues the trial judge abused his discretion in not requiring the State to try the criminal sexual conduct charges separate from the lewd act with a minor charge because the joinder made the jury more likely to convict him on the lewd act charge. We disagree.

The circuit court has wide discretion when deciding whether to consolidate charges for trial and its decision will only be overturned when an abuse of discretion has occurred. *State v. Smith*, 322 S.C. 107, 109, 470 S.E.2d 364, 365 (1996). There are several factors to consider when deciding whether the consolidation of charges was proper. "Where the offenses charged in separate indictments are of the same general nature involving connected transactions closely related in kind, place, and character, the trial judge has the power, in his discretion, to order the indictments tried together if the defendant's substantive rights would not be prejudiced." *State v. Jones*, 325 S.C. 310, 315, 479 S.E.2d 517, 519 (Ct.App. 1996). When offenses are interconnected they are considered to be of the same general nature. *Id.*

There were four separate indictments issued against Grace. The first was for criminal sexual conduct alleging sexual battery by committing the act of fellatio between the dates of August 18 and September 30, 1997. The second was for criminal sexual conduct alleging sexual battery by intercourse between the dates of August 18 and October 12, 1997. The third was for criminal sexual conduct by committing a sexual battery by digital penetration between August 18 and September 30, 1997. The fourth was for lewd act with a minor on or about October 16, and 17, 1997.

The niece testified that on three occasions during the August 18 to October 17, 1997 time span, Grace propositioned her to engage in a sexual encounter. Each time, the events occurred in the same place and in the same manner. The niece testified that Grace approached her the first time and stated that he wished to have sex with her. Grace then instructed the niece to come up to the guest bedroom, where Grace slept, when she was certain everyone else in the house was asleep. When the niece complied with Grace's instructions and went to the guest bedroom, Grace kissed the niece, performed oral sex on the niece, had the niece perform oral sex on him, digitally penetrated the niece, had intercourse with her and ejaculated on her stomach.

The second encounter occurred in mid-September in the same manner, and the same sequence of sexual events occurred. On both occasions, Grace asked the niece "Did she

need attention?" which the niece testified was a code for whether she wanted sex. On the evening of October 16, 1997, Grace once again asked the niece to come to his room in the same manner as before; however, this time only digital penetration occurred.

The indictments in this case involved charges of the same general nature. The crimes alleged were all sexual misconduct crimes and were interconnected. All incidents concerned the same parties, Grace and the niece, and took place in the same location, the guest bedroom, within a relatively short time period. The underlying evidence shows a pattern of sexual abuse and was essentially the same for all charges.[1] We reject Grace's argument that the jury could have been improperly influenced by the criminal sexual conduct charges in considering the lewd act charge. The jury had no trouble sorting out the evidence regarding the criminal sexual conduct charges by convicting Grace on simple assault charges only. There is no reason it could not have done the same for the lewd act charge. In addition, there was ample evidence in the record for the jury to convict Grace on the lewd act charge without considering any evidence from the events which led to the criminal sexual conduct charge. Under the facts of this case the circuit court did not abuse its discretion by consolidating the charges for trial. Moreover, judicial economy was fostered by the consolidation. *See United States v. Hines,* 39 F.3d 74, 79 (4th Cir.1994), *vacated in part on other grounds, Hines v. United States,* 516 U.S. 1156, 116 S.Ct. 1038, 134 L.Ed.2d 186 (1996).

## II. Limitation on Grace's Presentation of His Defense

### A. Exclusion of Mike Grace's Testimony

■ Grace claims the circuit court erred in excluding testimony of his witness Mike Grace regarding prior instances of

---

1. Although Grace argues the witnesses are not the same for the lewd act charge as for the criminal sexual conduct charges, they are the same except for Julie. The niece testified Grace's modus operandi was the same on the night of October 17 as on the other occasions, except for the fact that the performance of oral sex and sexual intercourse did not occur. The other witnesses at trial testified to their investigation concerning all charges. Moreover, the lewd act charge is integrally connected to the prior charges because it was the vehicle through which the other charges were discovered.

abuse by Julie against the niece. The circuit court excluded Mike Grace's testimony finding Grace was attempting to attack Julie's credibility on the basis of extrinsic evidence, in violation of Rule 608, South Carolina Rules of Evidence, and allowed only testimony regarding Julie's reputation for truthfulness or untruthfulness.

Grace's theory of defense was that the niece was so fearful of Julie's use of physical force to discipline her that the niece concocted the stories of being sexually abused by Grace to escape the household. Grace argues that there was a lack of physical evidence in the case to establish the niece had been sexually assaulted. As a result, the evidence necessary to convict Grace would have to be established through the testimony of the niece and Julie. Therefore, Grace argues, it was essential to his defense that he be allowed to present evidence of Julie's violent nature, and the niece's motive for lying about the sexual assaults. Grace contends the circuit court's ruling limiting his presentation of evidence effectively denied him his right to present his defense.

> The Sixth Amendment rights to notice, confrontation, and compulsory process guarantee that a criminal charge may be answered through the calling and interrogation of favorable witnesses, the cross-examination of adverse witnesses, and the orderly introduction of evidence.... The Amendment essentially "constitutionalizes" the right to present a defense in an adversary criminal trial.

*State v. Schmidt,* 288 S.C. 301, 303, 342 S.E.2d 401, 402 (1986).

As we read Grace's argument at trial for the admission of Mike Grace's testimony, it was based on Rule 608, SCRE. Rule 608(b) provides when specific acts evidence may be used to impeach a witness's testimony.

> **(b) Specific Instances of Conduct.** Specific instances of the conduct of the witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) con-

cerning the witness' character for truthfulness or untruthfulness[.]

Rule 608(b), SCRE.

Rule 608(a) permits the credibility of a witness to be impeached in the form of opinion or reputation testimony, but only for "truthfulness or untruthfulness." Mike Grace was permitted to state without objection that Julie did not have a reputation "as being a truthful and honest person." As noted above, Rule 608(b) provides, for the purpose of attacking credibility, that specific instances of conduct, other than the conviction of a crime, may not be proven by extrinsic evidence. Moreover, we do not see in the record where Grace proffered the testimony of Mike Grace as required by Rule 103, SCRE.[2]

■ Even if the circuit court erred by not permitting Mike Grace to testify about specific instances of alleged physical abuse, such error is harmless because it is cumulative to other testimony regarding Julie's acts of physical abuse of the niece. *See State v. Patterson*, 290 S.C. 523, 528, 351 S.E.2d 853, 856 (1986) (holding that excluding medical records was harmless when evidence was cumulative to testimony of the pathologist). The niece testified, "I was kind of afraid of her, because she did have a temper, and she did yell, and she did hit sometimes. And I think she went overboard sometimes about things, because she did have—she does have bipolar." During the niece's cross-examination, the following colloquy occurred:

Q: Did he ever—was your Aunt Julie always kind and caring towards you?

A: She was the disciplinary person, so she—no, she wasn't always kind and caring.

Q: I think you testified that she had—earlier you testified that she had—that you were afraid of her?

A: Yes, when she got angry.

Q: Why would you be afraid of your Aunt?

---

2. Grace's attorney at trial, who is not his attorney on appeal, did state at the conclusion of Mike Grace's testimony: "Your Honor, what I anticipated doing was—or attempting to do was have this witness, Mr. Grace, testify as to acts of physical abuse, and domestic violence, and verbal abuse directed toward the two teenagers, or children, that were living in the house."

A: Because she was the one who did the disciplinary things. I didn't like getting spanked. I didn't like getting smacked in the mouth.

During Julie's cross-examination, Julie admitted holding the niece's head under water in the bathtub, trying to drown the niece. She also testified that she peppered the niece's tongue when the niece used profanity. Mike Grace testified that he had witnessed Julie being abusive toward her niece. Finally, Grace testified that he had to intervene in Julie's punishment of the niece because he felt that Julie was going too far. Based on the above testimony, there was plenty of evidence in the record for the jury to have fully considered Grace's defense and any potential error by excluding Mike Grace's testimony is harmless beyond a reasonable doubt.

### B. Cross–Examination of Julie Cowens

During the trial, Grace sought to question Julie about two prior suicide attempts to impeach Julie's testimony that she felt she "was the most stable force in the relationship." Grace also attempted to introduce testimony regarding Julie's arrest for criminal domestic violence, which charges emanated from conduct occurring in December 1998, over a year after the October 1997 incidents, and were subsequently dismissed by the court. The court refused to allow Grace to question Julie on these matters, concluding that Julie's prior suicide attempts and criminal domestic violence arrest did not constitute specific acts related to the witness's character for truthfulness or untruthfulness.

Both the United States and South Carolina Constitutions provide that every criminal defendant has the right to cross examine the witnesses testifying against him. U.S. Const. amend. VI; S.C. Const. art. I § 14. South Carolina courts have discretion to limit the scope of cross-examination. *See State v. Saltz*, 346 S.C. 114, 131, 551 S.E.2d 240, 249 (2001). However, before the court may limit a criminal defendant's cross-examination of a witness, the record must show that the cross-examination is somehow improper. *See State v. Graham*, 314 S.C. 383, 385–86, 444 S.E.2d 525, 527 (1994). If not, then the circuit court abuses its discretion by limiting the cross-examination. *Id.* at 386, 444 S.E.2d at 527.

Evidence of specific bad conduct must go to the witness's credibility. *State v. Knox,* 98 S.C. 114, 117–18, 82 S.E. 278, 279 (1914). Acts of violence are generally not those types of acts which go to a witness's credibility. *See* Danny R. Collins, *South Carolina Evidence* 155 (2nd ed.2000). A criminal domestic violence charge is an act of violence towards another. As such, this prior act is not related to Julie's character for truthfulness or untruthfulness, and the circuit court did not err when it limited introduction of evidence regarding the criminal domestic violence charge, as allowing inquiry into this conduct would have been improper under Rule 608(b).

The court concluded under Rule 403, SCRE that the prejudicial effect of admitting the testimony regarding the suicide attempts would outweigh its probative value. A trial court's decision regarding the comparative probative value versus prejudicial effect of evidence should be reversed only in exceptional circumstances. *State v. Hamilton,* 344 S.C. 344, 357, 543 S.E.2d 586, 594 (Ct.App.2001). Moreover, the circuit court did not preclude all reference to questions regarding Julie's stability. The court ruled:

> I will allow you to go into the question of—any question regarding her stability, mental health treatment, or anything of that nature, because I think that is probative of the issue of her mental stability; and she has testified that she was the most stable one in the home.

The exclusion of this testimony was also tempered by Julie's explanation why she was "the more stable of the relationship." She testified on redirect: [3]

> Terry was never there for them. The children and I, contrary to what the counselor or the other counselor wants to say, had a very close knit relationship. We did things together. We went places together. We worked as a family.

> Terry had his own itinerary, Terry did what Terry wanted to do. If Terry wanted to golf, that left the three of us at home. If Terry wanted to go out, that left the three of us at home.

---

3. Julie was not cross-examined on this specific testimony.

And we spent a lot of quality, good time, we worked hard together at the place that we lived in Ohio. We had—we were a very close knit.

I interceded on many, many times, and many occasions for these children because of the wrath of Terry when he would come home. I had to play the buffer and the brunt—.

At this point, Grace objected, "based on the court's rulings previously." Whereupon the court stated "I thought I had ruled that questions of stability could go—could be inquired into and you did not inquire into it."

Under the facts of this case, we conclude the trial court did not err in excluding cross-examination of Julie regarding her prior suicide attempts[4] and her arrest on criminal domestic violence charges.

Accordingly, Grace's conviction is

**AFFIRMED.**

GOOLSBY, J., concurs.

ANDERSON, J., dissents in a separate opinion.

ANDERSON, J. (dissenting).

I vote to **REVERSE** and **REMAND.** In the case *sub judice,* Julie Wilkinson Cowens, the former wife of Terry Lee Grace ("Appellant"), testified she was "the most stable force" in the family and the victim of abuse by Appellant. In response to her averments, Appellant attempted to question Cowens about her previous suicide attempts and arrest for criminal domestic abuse. The circuit judge refused to admit any of this testimony. This was error.

### I. The Rule: Criminal Defendant's Right to "Meaningful" Cross Examination

A trial court's ruling on the proper scope of cross examination will not be disturbed absent a manifest abuse of discre-

---

4. We note that Julie and a police officer testified to a suicide attempt that occurred after the incident of Julie finding the niece in bed with Grace. Additionally, much evidence was adduced regarding Julie's depression and the treatment of her depression.

tion. *State v. Mitchell*, 330 S.C. 189, 498 S.E.2d 642 (1998). This rule, however, is subject to the Sixth Amendment's guarantee of a defendant's right to *"meaningful"* cross examination. *Id.; see also State v. Cheeseboro*, 346 S.C. 526, 544, 552 S.E.2d 300, 309 (2001), *cert. denied* ("The right to meaningful cross-examination of an adverse witness is included in the defendant's Sixth Amendment right to confront his accuser.") (citations omitted). In *Mitchell*, the Supreme Court articulated the necessary showing required from an appellant who asserts an infringement on his right to meaningful cross examination:

> [A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which the jurors ... could appropriately draw inferences relating to the reliability of the witness."

*Id.* at 196, 498 S.E.2d at 645–46 (quoting *State v. Smith*, 315 S.C. 547, 551–52, 446 S.E.2d 411, 414 (1994)).

## II. Cowens' Prior Suicide Attempts

During cross examination by Appellant, Cowens testified that in regard to her family's home life, she was "the most stable force in [the] relationship." Appellant then attempted to question Cowens about her two prior suicide attempts. The solicitor objected and the jury was immediately excused. At that time, Appellant proffered testimony in which Cowens admitted she had attempted suicide on two separate occasions by taking sleeping pills. Following the proffer, the trial judge sustained the State's objection to the admission of this testimony, and stated: "In my view, [the testimony concerning the suicide attempts] does not go to the truthfulness or untruthfulness of the witness."

Rule 608(b), SCRE provides:

**Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of

the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

This Court has stated the focus of Rule 608(b) is not on the type of evidence that is admitted; rather, *the focus of the rule is on the purpose for which the evidence is introduced. Mizell v. Glover,* 339 S.C. 567, 529 S.E.2d 301 (Ct.App.2000), *cert. granted* (emphasis added). The trial judge's exclusion of testimony regarding Cowens' prior suicide attempts under Rule 608(b) was error. Appellant only attempted to elicit this testimony to rebut Cowens' declaration that she was "the most stable force in [the] relationship."

Generally, "any matter is [a] proper subject of cross-examination which is responsive to testimony given on direct examination, *or which is material or relevant thereto, and which tends to elucidate, modify, explain, contradict or rebut testimony given in chief by the witness." State v. Taylor,* 333 S.C. 159, 174, 508 S.E.2d 870, 878 (1998) (emphasis added) (citation omitted). Additionally, "[t]he cross-examination of matters which were addressed in direct-examination is not objectionable, even if the answers affect a witness' credibility and character." *Id.* at 174–75, 508 S.E.2d at 878 (citation omitted). Cowens testified during direct examination that she had a nervous breakdown after finding Appellant and the victim in bed together. She also discussed her diagnosis and longtime history of depression. Notwithstanding these experiences, Cowens claimed to be "the most stable force in [the] relationship," thus implying Appellant was unstable. Evidence of her prior suicide attempts was therefore relevant.

Appellant's theory of the case was that Cowens' mental instability and physical abuse motivated the victim to make the allegation of sexual abuse in a desperate attempt to escape from Cowens. Cowens' testimony that she was "the most stable force in [the] relationship" contradicted Appellant's theory. Therefore, testimony regarding Cowens' prior suicide attempts should have been admitted because it was probative as to the issue of stability within the home. *See State v.*

*Finley*, 300 S.C. 196, 200, 387 S.E.2d 88, 90 (1989) (reciting the rule that a criminal defendant's right to "confront and cross examine witnesses against him and to present a full defense to the charges makes relevant [the] evidence which tends to establish motive, bias, and prejudice on the part of the prosecuting witness."). Cowens' mental condition was relevant; concomitantly, instances of her conduct that illustrated her state of mind were within the proper scope of cross examination.

While the trial court agreed Appellant's inquiry into Cowens' past suicide attempts was relevant, he ruled the testimony was inadmissible because "the prejudicial effect outweigh[ed] the probative value." This determination was also an improper basis on which to exclude the testimony. Cowens' testimony was neither misleading nor confusing; rather, it gave a complete picture as to the issue of her stability and significantly impacted on her statement that she was "the most stable force in [the] relationship." The only party to suffer prejudice was Appellant. This is because the trial judge's exclusion of Cowens' testimony denied him the opportunity to fully present his defense. *See State v. Ford*, 334 S.C. 444, 453, 513 S.E.2d 385, 389 (Ct.App.1999) ("Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.") (citations omitted).

### III. Cowens' Arrest for Criminal Domestic Violence

Appellant additionally attempted to question Cowens regarding an incident of domestic violence between her and Appellant, which ultimately resulted in her arrest. The State objected to this questioning and Appellant proffered Cowens' testimony outside the presence of the jury. Appellant asserted this testimony was relevant because of Cowens' previous assertion that she was "the most stable force in [the] relationship" and that she had been the victim of abuse by Appellant. The trial judge ruled the testimony was inadmissible under Rules 403 and 608:

> In my view, I do not think that that is admissible as being probative of the issues in this case. I don't think that it is admissible under 608, as impacting on truthfulness or un-

truthfulness, and I don't think you can make that quantum leap of saying that somebody that's arrested for criminal domestic violence is unstable.

. . .

So in my view, under Rule 608(b) and under 403(b) that—I just think the probative value is outweighed by the prejudicial [e]ffect, so I'm not going to allow the testimony about the release, the arrest and release, for CDV from—of this lady.

"A trial judge has considerable latitude in ruling on the admissibility of evidence and his rulings will not be disturbed absent a showing of probable prejudice." *State v. Kelley*, 319 S.C. 173, 177, 460 S.E.2d 368, 370 (1995) (citation omitted). "Evidence is relevant if it tends to establish or to make more or less probable some matter in issue upon which it directly or indirectly bears." *State v. Schmidt*, 288 S.C. 301, 303, 342 S.E.2d 401, 403 (1986) (citation omitted). The trial judge committed prejudicial error when he excluded relevant testimony regarding Cowens' arrest for criminal domestic violence, which Appellant offered to show her capacity for violent behavior.

Appellant's credibility was essential to his defense. Any error that substantially damages a criminal defendant's credibility cannot be held harmless where such credibility is essential to his defense. *State v. Outlaw*, 307 S.C. 177, 414 S.E.2d 147 (1992). In the case at bar, there was no physical evidence to support the victim's claims of Appellant's sexual abuse; thus, the State relied primarily on the credibility of the witnesses. Appellant's right to present a defense mandates that he be permitted to freely cross examine the witnesses about the credibility issues relevant to his defense.

Cowens professed that she was "the most stable force in [the] relationship." Additionally, she testified "there [were] times of abuse . . . violence. [Appellant was] more of a verbal abuser, very controlling." This testimony presented a picture that Appellant was abusive toward Cowens, an allegation similar to the charge leveled against him by the State in the instant case. Cowens' statements that Appellant abused her therefore arguably bolstered her testimony that she was the "the most stable force in [the] relationship." However, Cow-

ens' arrest for criminal domestic violence was evidence of her abusive nature, which Appellant attempted to have admitted as part of his defense. This evidence was relevant because it rebutted Cowens' testimony concerning her stability and Appellant's history of abuse towards her. Moreover, it impacted directly on her credibility. The trial judge's exclusion of testimony relating to Cowens' arrest resulted in prejudicial error to Appellant.

## CONCLUSION

Cowens placed at issue her mental stability and own capacity for violence when she averred she was "the most stable force in [the] relationship" and the victim of abuse by Appellant. Appellant was therefore entitled to question her about this statement and test her veracity and reliability as a witness under the aegis and ambit of the Sixth Amendment and Rule 608(b). By refusing to admit testimony regarding Cowens' prior suicide attempts and arrest for criminal domestic violence, the trial judge impermissibly prejudiced Appellant. I would vote to *REVERSE* Appellant's conviction and *REMAND* for a new trial.