STATE v. THRAILKILL.

1. EVIDENCE.—IN HOMICIDE case it is admissible to show by person carrying information to deceased at his home that his brother was shot, that the deceased was sitting by the fire holding his little babe in his arms.
2. IBID.—TRANSACTIONS closely connected with a homicide leading up to it, explanatory of it, and tending to show mental attitude of defendant acting in concert and sympathy with another, are admissible.
3. COERCION—CRIME—PARENT AND CHILD.—No command or coercion of the father will justify a criminal act by a child, *capax doli*.
4. CRIME—INTENT.—MOTIVE is not an essential element of crime and need not be shown, although its presence or abesnce may be considered in determining whether there was a criminal intent.

Before PURDY, J., Saluda, 1905. Affirmed.

Indictment against Clarence Thrailkill for killing Benjamin Burton. From sentence on verdict of manslaughter, defendant appeals.

*Messrs. Able & Blease, C. J. Ramage* and *E. F. Strother*, for appellant, cite: *Testimony as to affair with Lackey Burton inadmissible:* 62 L. R. A., 143, and note; Taylor on Ev., 364, *et seq.,* 312; 56 S. C., 360; 78 Va., 287; 40 S. C., 484; Green on Ev., sec. 51; 47 S. C., 90. *Act done from compulsion or necessity is not a crime:* 2 Kent., 206; 1 Bish. Crim. L., sec. 346.

*Solicitor R. A. Cooper,* and *Messrs. J. W. Thurmond, E.*

*L. Asbill* and *B. W. Crouch, contra.* Oral argument by *Mr. Thurmond.*

February 23, 1906. The opinion of the Court was delivered by

MR. JUSTICE JONES. The defendant Clarence Thrailkill was indicted for the killing of Benjamin Burton at Monetta, Saluda County, on the 27th day of April, 1904, was found guilty of manslaughter and sentenced to imprisonment upon the public works of Saluda County, or the penitentiary, for three years. Morgan Thrailkill, the father of defendant, had been indicted for the same offense, was convicted of murder with a recommendation to mercy and sentenced to life imprisonment, which judgment on appeal therefrom was affirmed by this Court. *State* vs. *Thrailkill,* 71 S. C., 136. It appears that on April 27, 1904, Morgan Thrailkill and Clarence Thrailkill left home in a buggy, Morgan armed with a shotgun and Clarence armed with a pistol, and drove to the store of Lackey Burton, the brother of the deceased, Benjamin Burton, and Morgan Thrailkill demanded of Lackey Burton the return of a pistol claimed by him, which Lackey Burton testified had been pawned with him by a negro. Lackey Burton testified that he had offered to deliver the pistol to Morgan Thrailkill upon the payment of thirty-five cents, to secure which it had been pledged; that without any aggression on his part Morgan Thrailkill attempted to shoot him from the buggy with the shotgun; that he seized the gun to protect himself, and while Morgan Thrailkill and he both had hold of the gun Clarence Thrailkill shot him with a pistol. Clarence Thrailkill testified that Lackey Burton refused to give up the pawned pistol and endeavored to take the gun from the buggy by force without any aggression on their part, and he further testified that he shot Lackey Burton in defense of his father, seeing Lackey Burton trying to draw a pistol while struggling for the possession of the gun. The shot frightened the mule hitched to the buggy, and while the Thrail-

kills were getting it under control, Lackey Burton started to run across the railroad to the store of Stevens & Catoe, seventy-five to one hundred yards distant. Morgan Thrailkill got out of the buggy and followed Lackey Burton with his gun and, according to the testimony of a witness for the State, appeared to try to shoot Lackey Burton, but for some reason did not fire. Lackey Burton, limping from his wound, entered the store of Stevens & Catoe. According to the testimony of D. B. Busby, the principal witness for the State, Morgan Thrailkill did not enter the store but walked back and forth over the ground there, evidently looking for some one in the store, and that Clarence Thrailkill was walking up and down the street with a pistol in his hand. This witness testified that in a short while he saw the deceased, Benjamin Burton, come from the direction of his home walking towards the store of Stevens & Catoe with a gun under his left arm and making no demonstration; that Morgan Thrailkill raised his gun and fired in the direction of Benjamin Burton; that Benjamin Burton fell to the ground; that Clarence Thrailkill raised his pistol and fired in the direction of Benjamin Burton after he fell. Clarence testified that the deceased was in the act of raising his gun when his father fired, and that if he (the defendant) fired, it was under excitement. It appears that Benjamin Burton left his home with a gun immediately after receiving a message delivered to his wife by Boyce Gantt a few minutes after the shooting of his brother, Lackey Burton.

Appellant's fourth exception alleges error in allowing the State's witness, Boyce Gantt, to testify that when he carried the message to Burton's home about Lackey being shot, he was sitting at the fire with his little baby in his arms.

1    A similar exception was overruled in _State_ v. _Thrailkill_, 71 S. C., 142, as to which the Court, by Mr. Justice Woods, said: "Whether the deceased knew at the time he was killed of the shooting of his brother by Clarence Thrailkill, was a most important inquiry as to a substantive fact, because such knowledge would manifestly powerfully

affect his feelings and influence his conduct. Hence, proof that he was informed of the shooting of his brother tended to enlighten the jury as to his feelings towards the Thrailkills, and to interpret his action. Therefore, it was not only competent to prove that Boyce Gantt had informed him, through his wife, of the shooting of his brother, but the issue being whether the defendant killed in self-defense, it was clearly favorable to him to prove that deceased had a motive to attack in revenge for the shooting of his brother."

The fifth, sixth and seventh exceptions allege error in permitting the State's witnesses, Busby and Lackey Burton, to testify as to the matters which took place between Lackey Burton and the defendant and his father, as they did not tend to show the mental attitude of defendant towards the deceased, but towards another person, Lackey Burton. A similar exception was urged, but overruled, in *State* v. *Thrailkill, supra,* page 140. The transactions narrated in the testimony were closely connected with the homicide, and led up to it, were explanatory of it, and tended to show the mental attitude of defendant acting in concert and sympathy with Morgan Thrailkill throughout. *State* v. *Miller, ante,* 277.

The remaining exceptions, not abandoned, are the first and third, which relate to the charge to the jury. The first exception assigns error because the Court refused to instruct the jury as follows: "A person required by and compelled by another to take part in the commission of a crime, or the doing of an unlawful act, is not guilty in the eyes of the law if the force or coercion, either actual or constructive, used to induce the person charged with such offense, was suffcient to compel a person of the same age and discretion and of ordinary firmness and reason to do such act of violence or other unlawful act." This is a most remarkable request to charge and was very properly refused. It had no application whatever to the case. The defendant was at the time of the homicide between seventeen and eighteen years old, and accountable for his unlawful

acts. It does not even appear that he acted under the command or coercion of his father, and if he did, no command by a parent will justify a criminal act by a child, *capax doli*.

The third exception imputes error in the Court's refusal to charge as follows: "Before the State is entitled to a verdict of guilty in a homicide case, it is incumbent to prove beyond a reasonable doubt that the accused person had a motive for, or an intention to, commit the crime of which he is accused, and was not possessed of and prompted by a wicked, depraved and wanton spirit, without regard for the rights of others, a verdict of guilty cannot be reached." The request was properly refused. Motive is not an essential element of crime and need not be shown, although the presence or absence of evidence of a motive may be considered in determining whether there was the criminal intent, which is an essential element in every common law crime. Moreover, the request to charge might have been construed as eliminating manslaughter as a possible verdict. The charge given was explicit in stating to the jury what it was necessary for the State to prove in order to convict under the indictment.

The judgment of the Circuit Court is affirmed.