522 S.E.2d 598

**The STATE, Respondent,**

v.

**Derrick SMITH, Appellant.**

No. 25010.

Supreme Court of South Carolina.

Heard June 22, 1999.

Decided Nov. 8, 1999.

28

Senior Assistant Appellate Defender Wanda H. Haile, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General G. Robert DeLoach, III, and Solicitor Warren B. Giese, all of Columbia, for respondent.

PER CURIAM:

Appellant was convicted of murder and assault and battery with intent to kill (ABIK)[1] and sentenced to life and ten years' imprisonment, respectively. He appeals.

## FACTS

Shortly before midnight on October 14, 1996, appellant shot and killed his six-week-old daughter, Fuschia, while she was being held by his wife, the infant's mother, Tammy. The bullet entered Fuschia's chest, exited through her back, and lodged in Tammy's clavicle. Appellant claimed the shooting was an accident.

A neighbor testified, while at home with the television on, he heard Tammy say several times, "[a]ppellant, get away from me when I am holding the baby." Fifteen seconds later, the neighbor heard a gunshot, went outside, and saw a man running in the alley. The neighbor characterized Tammy's voice as loud and argumentative.

A paramedic testified when he arrived at the scene of the shooting, the infant was unresponsive.[2] He testified Tammy stated "she was involved with an argument and that mother - - - -er shot her." She stated "I cannot he (sic) believe he got mad and shot me." Another paramedic testified Tammy stated she and appellant were arguing and he shot her.

An investigator who interviewed Tammy shortly after the shooting testified Tammy stated appellant had been drinking. They were arguing over a car. Appellant obtained his pistol, pointed it at her, and then fired a shot inside the home.

---

1. The jury was also charged the lesser-included offenses of voluntary and involuntary manslaughter and assault and battery of a high and aggravated nature.

2. Although Fuschia died at the scene, no one told Tammy until she arrived at the hospital.

Tammy picked up the baby and went outside. Appellant followed Tammy outside then shot her while she was holding Fuschia.

The investigator asked Tammy the following questions:

Q. Why do you think [appellant] shot you?

A. He was mad and had been drinking.

Q. Did he tell you he was going to shoot you?

A. He said, "if I ever catch you with anybody I will blow both of your brains out, because I love you."

Although she gave a written statement to the police indicating she and her husband were arguing and the shooting was intentional, at trial Tammy testified appellant was unloading his pistol when the shooting occurred. Contrary to her written statement, Tammy denied appellant threatened to "blow [her] brains out," denied he struck her in the face, denied pleading with appellant not to touch her while she held Fuschia, and denied she left her home to telephone the police. She testified she did not remember giving a statement to the police.

Three hours after the shooting, Curtis Weathersbee gave the following statement:

On 10–15 (sic) –96 I was in [appellant's] house, watching a football, the football game. Earlier [Tammy and appellant] were having a verbal confrontation because she went to her cousin's house and stayed too long. He was explaining that she should not be gone from the baby that long because the baby was sick. While raving at her he was constantly threatening her that he would shoot her head off, shoot her in the face.

As he told her that he was approaching the bedroom to get a pistol. He stood in the kitchen, with the pistol beside him, just wobbling from left to right with an angry look on his face. That is when the pistol went off. After that he went and put the pistol back in the bedroom. He came back out and was pacing the floor constantly threatening her. Tammy grabbed her baby and said, 'oh, Lord, let me get up and go.'

By the time she got at the car trying to leave, that is when he left out the door with the pistol. The door slammed

shut. I heard Tammy holler. I was praying that it would not happen. But I heard a shot. I jumped, stating—I jumped up and as I was approaching the door, [appellant] ran back in the house stating, 'I believe that I shot Tammy.'

Mr. Weathersbee testified his statement was involuntary; he stated he was threatened by an investigator. He testified he did not remember telling the investigator appellant had threatened to shoot Tammy's "head off" or in the face. He admitted appellant and Tammy had argued and appellant was "real upset" and "hollering."

Through a written statement, appellant indicated he was removing the pistol from his trouser pocket when it fired. Appellant did not testify at trial.

## ISSUES

I. Did the trial judge err by allowing the solicitor to refer to appellant's July 1996 criminal domestic violence conviction?

II. Did the trial judge err by charging the jury on unlawful possession of a weapon?

## DISCUSSION

### I.

Appellant argues the trial judge erred in admitting his July 1996 criminal domestic violence conviction because there was insufficient connection between the prior conviction and the murder charge. We disagree.

Prior to trial, the solicitor moved to be allowed to introduce evidence of the ongoing abusive relationship between appellant and Tammy. Specifically, the solicitor moved to introduce appellant's four criminal domestic violence convictions in order to establish appellant's state of mind at the time of the shooting and to rebut his claim of accident.[3] Appellant argued there was no similarity between the prior convictions and the current charge and, therefore, the convictions were inadmissible. The trial judge ruled the July 1996 criminal domestic

---

3. Tammy was the victim in each of the four incidents.

violence conviction was admissible and that he would deter-
mine whether the other convictions were admissible.

During trial, Tammy testified on direct examination:

Q. Isn't it a fact, Tammy, that not three months before
this incident, when you were pregnant with Fuschia, [appel-
lant] assaulted you, not once but twice?

A. We were having verbal conversation and to keep it
down, I called the police because we was having an argu-
ment and I wanted to get in the car and leave, and we kept
having an argument, so I called the police. They insinuated
that.

Q. Isn't it a fact that you filed two police reports within
thirty minutes of each other on July 10, 1996, against your
husband? Correct?

A. I could have. I do not remember.

Q. And went to court on one of them. Correct?

A. I could have.

Q. And he was convicted. Correct?

A. I think just on one.

Q. Of criminal domestic violence against his eight month
pregnant wife. Correct?

A. I am not sure.

 Generally, a motion in limine seeks a pretrial eviden-
tiary ruling to prevent the disclosure of potentially prejudicial
matter to the jury. *State v. Hill,* 331 S.C. 94, 501 S.E.2d 122
(1998); *State v. Floyd,* 295 S.C. 518, 369 S.E.2d 842 (1988). A
pretrial ruling on the admissibility of evidence is preliminary
and is subject to change based on developments at trial. *Id.*
A ruling in limine is not final; unless an objection is made at
the time the evidence is offered and a final ruling procured,
the issue is not preserved for review. *State v. Mitchell,* 330
S.C. 189, 498 S.E.2d 642 (1998); *State v. Simpson,* 325 S.C. 37,
479 S.E.2d 57 (1996).

 Appellant failed to object to the solicitor's questions
concerning his July 1996 criminal domestic violence conviction.
Accordingly, this issue is not preserved for consideration on
appeal. *State v. Mitchell, supra.*

■ In any event, as a general rule, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(b), SCRE; *see State v. Jenkins*, 322 S.C. 414, 472 S.E.2d 251 (1996) (evidence of other crimes, wrongs, or acts is not admissible to prove a defendant committed the specific crime charged). However, evidence of other crimes, wrongs, or acts is admissible if it tends to establish motive, intent, the absence of mistake or accident, identity, or the existence of a common scheme or plan. Rule 404(b), SCRE.[4] The evidence must be logically relevant to the particular purpose or purposes for which it is sought to be introduced. *State v. Bell*, 302 S.C. 18, 393 S.E.2d 364 (1990). Even if the prior crime evidence is relevant, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. Rule 403, SCRE; *State v. King*, 334 S.C. 504, 514 S.E.2d 578 (1999).

■ The solicitor properly offered appellant's July 1996 criminal domestic violence conviction to establish appellant's intent to kill and the absence of mistake or accident. The prior conviction was logically relevant to appellant's intent and absence of mistake or accident at the time of the shooting.[5] *See State v. Key*, 277 S.C. 214, 284 S.E.2d 781 (1981) (in trial for aggravated assault and battery arising from a shooting at defendant's store, testimony defendant had threatened victim's associate two or three times with a gun at the store was admissible to show absence of mistake or accident). We conclude the probative value of the prior conviction was not outweighed by unfair prejudice to appellant. The trial judge did not abuse his discretion in admitting appellant's July 1996

---

4. These are the same exceptions enumerated in *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923).

5. The State's case involved the doctrine of transferred intent. Under the doctrine of transferred intent, "the actor's intent to kill his intended victim is said to be transferred to his actual victim. All that is required of murder is the mental state of malice, provided by the intent to kill a human being coupled with an act which caused the death of a human being." *State v. Horne*, 282 S.C. 444, 446, 319 S.E.2d 703, 704 (1984). Here, the State theorized appellant intended to kill Tammy. Instead, he shot and killed Fuschia. His intent to kill Tammy supplied the element of malice.

criminal domestic violence conviction. *State v. Nance*, 320 S.C. 501, 466 S.E.2d 349 (1996) (the admission of evidence is within the discretion of the trial court and will not be reversed by this Court absent an abuse of discretion).

## *II.*

Appellant argues the trial judge erred by charging the jury on the statutory offense of unlawful possession of a weapon. He contends there is no requirement the trial judge instruct the jury on the unlawful possession statute and, further, the charge constituted a comment on the facts in violation of Article V, § 21 of the South Carolina Constitution.

While discussing the proposed jury charge, the solicitor agreed appellant was entitled to an instruction on accident. The trial judge stated he would instruct the jury on the unlawful pistol statute.[6] Appellant objected, arguing there was no evidence as to whether he was either on or off of his property at the time of the shooting. The trial judge over-ruled the objection then charged the jury on accident and the unlawful possession statute.

Appellant's present argument is not preserved for consideration on appeal. Prior to the charge, appellant object-ed to instructing the jury on the statute, arguing there was no evidence as to his location at the time of the shooting. He did not claim, as he does now, that there is no requirement the trial judge instruct the jury on the unlawful possession statute or the charge constituted a comment on the facts in violation of the Constitution. Since he did not object at trial on the same grounds as raised on appeal, the issue is not preserved for review. *State v. Ard*, 332 S.C. 370, 505 S.E.2d 328 (1998) (failure to object to jury charge constitutes a waiver of the right to raise the issue on appeal); *State v. Byram*, 326 S.C. 107, 485 S.E.2d 360 (1997) (defendant may not argue one ground below and another on appeal).

**AFFIRMED.**

---

**6.** This statute provides: "[i]t is unlawful for anyone to carry about the person any pistol, whether concealed or not, except as follows: ... (8) Any person in his home, or upon his real property, or fixed place of business." S.C.Code Ann. § 16–23–20(8) (Supp.1998).