537 S.E.2d 291

The STATE of South Carolina, Respondent,

v.

Gregory R. BLURTON, Appellant.

No. 3236.

Court of Appeals of South Carolina.

Heard June 7, 2000.

Decided Aug. 7, 2000.

Rehearing Denied Oct. 7, 2000.

502

Tara Dawn Shurling, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Walter M. Bailey, Jr., of Summerville, for respondent.

CURETON, Judge:

A jury convicted Gregory R. Blurton of two counts of armed robbery, kidnapping, grand larceny of a motor vehicle, and

failure to stop for a blue light. The trial court sentenced Blurton to three life sentences for the kidnapping and armed robbery convictions, ten years for grand larceny, and three years for failing to stop for a blue light, with all sentences running concurrently. Blurton appeals. We reverse and remand for a new trial.

## FACTS

On April 6, 1997, Blurton entered the Orangeburg Wal–Mart between 11:30 p.m. and 12:00 midnight. After asking for Roger, an assistant manager who was not working that night, Blurton told assistant manager Brandon Beckman he needed access to the electrical room to do some work.[1] Beckman tried to open the room but did not have a key to the lock.

As Blurton and Beckman walked away, Blurton pulled out a gun and demanded that Beckman take him to the cash office and give him the money inside. Brenda Arant, the cash office clerk, was still inside the office. Blurton ordered Beckman to get on the floor and demanded Arant fill a shopping bag with money. Blurton screamed his orders and threatened to shoot Beckman and Arant if they did not cooperate. Blurton told Beckman he needed Beckman to drive him down the road. After Beckman responded that he did not have a car at the store, Blurton demanded Arant's keys. When Arant informed Blurton her car keys were in her locker, Blurton bit off the end of the phone cord, told Arant not to call anybody for at least five minutes, and pushed Beckman out of the office. Although there was in excess of $200,000 in the cash office, Blurton left with only $8,500.

After leaving the cash office, Blurton put the gun in his pocket and forced Beckman to walk outside the store with him. Once outside, Blurton chose the car of a female customer who had just arrived in the parking lot. As the men approached the woman, Blurton pulled the gun out again. The woman threw down her purse, screamed, and started to run away. While pointing the gun at her, Blurton demanded her keys. The woman threw them at him, whereupon Blurton climbed into her car and drove away.

---

1. Blurton had been doing electrical work at Wal–Mart during the store's expansion.

A short time after leaving the parking lot, Blurton ran a red light, attracting the attention of a police officer. When the officer attempted to stop Blurton, Blurton led the police on a high speed chase which ended after he wrecked the customer's car.

At trial, Blurton did not deny committing the acts of which he was accused, but argued a lack of criminal intent. During his testimony, he explained that James Mayfield, another assistant manager of the Orangeburg Wal–Mart, was a former Navy SEAL who also worked for the Central Intelligence Agency (CIA). He further explained that Mayfield recruited him to assist the CIA in its effort to infiltrate a drug cartel. In exchange for his assistance, Blurton was promised a new identity and a presidential pardon for several bank robberies he committed in the 1970s. Blurton claimed Mayfield gave him surveillance and firearms training and loaned him hand to hand combat videos developed by a Navy SEAL instructor. Additionally, Blurton testified he had completed several assignments in relation to the CIA's infiltration plan, codenamed "Operation Double White."

The "staged" robbery of the Wal–Mart was Phase Three of the operation, an attempt to convince the drug cartel that Blurton was a wanted and dangerous man, thereby facilitating his infiltration of the group. He explained the robbery was fake and, according to Mayfield, both Beckman and Roger were aware of the plan. Mayfield furnished the gun for Blurton to use during the staged crimes. While in the cash office, Blurton claims he decided to have Arant fill the bag with one dollar bills, rather than with the sizeable completed deposits, as Mayfield had instructed, because he did not want to be responsible for a large sum of money. Blurton was supposed to leave the money at a specific drop location at the back of a hotel, where Mayfield would retrieve it and promptly return it to Wal–Mart on behalf of the CIA. According to Blurton, he had to pretend the robbery was real to put on a "show" for the security cameras and members of the local sheriff's department who, according to Mayfield, were involved with the drug cartel.

Blurton stated that when he saw the customer's car in the parking lot, he assumed it was his "ride." He thought the

customer was cooperating with the CIA and that her show of fear and panic was an act. He testified that he evaded police officers because he was waiting for the CIA to intercede on his behalf, so he would not get caught.

Although Blurton consistently maintained that he was working for the CIA when he committed the acts involved in each of the charged offenses, his trial counsel simply attempted to prove Blurton genuinely believed he was a CIA operative at the time of the alleged crimes and thus lacked criminal intent.

## *LAW/ANALYSIS*

### I. Evidentiary Issues

Blurton's trial counsel attempted to present evidence which would corroborate his explanation of events and support his defense of lack of criminal intent. The evidence included (1) taped telephone conversations between Blurton and Mayfield; (2) testimony that the investigating officer thought Blurton actually believed he was part of a CIA operation; (3) testimony that others heard and believed Mayfield's claim that he was a former Navy SEAL; and (4) two newspaper articles which showed Mayfield convinced the local newspaper he was a Navy SEAL. The trial court excluded this evidence. Blurton argues this was error.

Decisions regarding the admissibility of evidence are within the trial court's sound discretion and will not be reversed on appeal absent a prejudicial abuse of that discretion. *State v. Smith,* 337 S.C. 27, 522 S.E.2d 598 (1999) (citing *State v. Nance,* 320 S.C. 501, 466 S.E.2d 349 (1996)); *State v. Fulton,* 333 S.C. 359, 509 S.E.2d 819 (Ct.App.1998).

### A. Taped Conversations

■ Blurton's counsel sought to admit taped telephone conversations between Blurton and Mayfield which were made without Mayfield's knowledge. Blurton made the tapes after the police investigator concluded Mayfield was also a suspect based on interviews with Blurton. During the conversations, Mayfield repeatedly affirmed or failed to deny Blurton's statements that Mayfield had involved him in the CIA operation and that the robbery was staged. The trial court excluded the

tape recordings as inadmissible hearsay, but allowed the defense to proffer the tapes and transcripts prepared from them into evidence.[2] We agree that this evidence should have been admitted.

Hearsay is generally inadmissible. Rule 802, SCRE. "Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted." *Jackson v. Speed*, 326 S.C. 289, 304, 486 S.E.2d 750, 758 (1997); *see also* Rule 801(c), SCRE (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). A statement that is not offered to prove the truth of the matter asserted should not be excluded as hearsay. *See State v. Blackburn*, 271 S.C. 324, 247 S.E.2d 334 (1978) (statement implicating defendant in alleged prior crimes, which was not offered to prove the truth of the matter asserted, that is, that defendant in fact committed the prior crimes, but to establish motive, was not "hearsay" and its admission was not error); *Hawkins v. Pathology Assocs. of Greenville, P.A.*, 330 S.C. 92, 498 S.E.2d 395 (Ct.App.1998) (allowing admission of letters, an anniversary card, and video to show close familial bond between the decedent, her husband, and her children in a malpractice action).

In this case, the tapes were not offered to prove the veracity of any statements made during the conversations between Blurton and Mayfield. Rather, they were offered to show that Blurton had been led to believe the robbery was staged and that his actions were sanctioned by the CIA. Because these conversations would have added credence to Blurton's defense that he lacked criminal intent and were not hearsay, the trial court erred in excluding them. *See State v. Harris*, 311 S.C. 162, 167, 427 S.E.2d 909, 912 (Ct.App.1993) ("Due process requires that a criminal defendant be given a reasonable opportunity to present a complete defense.").

*B. Investigator's Opinion on Blurton's State of Mind*

In a preliminary hearing, Detective Jack Coleman, the investigator in this case, said he was convinced Blurton be-

---

2. Although the tape recordings are not on file as exhibits, the transcripts are included in the record on appeal.

lieved he was involved in a CIA operation when he robbed the Wal-mart. The court excluded the testimony, determining it was the province of the jury to determine whether Blurton believed he was working for the CIA when he committed the charged crimes.[3] We find no abuse of discretion.

 "The general rule is that opinion testimony which is determinative of the ultimate fact in issue should be excluded as an invasion of the province of the factfinder. This rule, however, is not inflexible." *Richmond v. Tecklenberg*, 302 S.C. 331, 334, 396 S.E.2d 111, 113 (Ct.App.1990) (citing *State v. Moorer*, 241 S.C. 487, 129 S.E.2d 330 (1963), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991)); *see also State v. Koon*, 278 S.C. 528, 298 S.E.2d 769 (1982), *overruling on other grounds recognized by State v. Matthews*, 291 S.C. 339, 353 S.E.2d 444 (1986) (holding trial court properly excluded testimony concerning whether a mitigating factor was present as such determination was the province of the jury). Lay witnesses are permitted to offer opinion testimony when such testimony is rationally related to the witness's perception, does not require special knowledge, and may assist the jury's understanding of the witness's testimony. *See* Rule 701, SCRE.

While we believe the trial court could have properly admitted the detective's prior testimony into evidence, the court's refusal to do so does not constitute an abuse of discretion. Blurton did not attempt to offer the detective as an expert in the beliefs of others. The detective's opinion was not necessary for the jury to understand other portions of his testimony. Furthermore, the testimony was the investigator's opinion on the ultimate factual issue in the case—whether Blurton believed he was working for the CIA and lacked criminal intent. Therefore, we hold the trial court's refusal to admit the prior testimony was not reversible error.

---

**3.** The trial court's exact wording was: "Well, it wouldn't make any difference whether he believes him or not, It's up to a jury to decide." The next day, when Blurton's attorney tried to argue that the statement was admissible under Rule 801(d)(2)(A), the trial court stated: "Counsellor [sic], I've already ruled on that yesterday, and I said I would not allow him to—that's a jury question. I don't want to hear anymore about that."

■ On appeal, Blurton argues the detective's opinion was admissible as an admission under Rule 801(d)(2)(A), SCRE.[4] This rule provides an exception to the hearsay rule. Thus, it would allow the admission of evidence which would otherwise be excluded as hearsay. The detective's opinion in this case was not excluded as hearsay, but because the trial court determined it was the jury's province to determine whether Blurton believed he was working for the CIA when he committed the charged crimes. Therefore, whether the detective's opinion was admissible under Rule 801(d)(2)(A) is not relevant to the trial court's ruling concerning the testimony's admissibility.

## C. Whether Others Believed Mayfield to be a Navy SEAL

Blurton also attempted to introduce testimony that other people at Wal–Mart heard and believed Mayfield's statements that he was a former Navy SEAL. The trial court excluded the evidence, concluding it was both hearsay and irrelevant. Blurton asserts the court abused its discretion in excluding the evidence. We agree.

The testimony did not constitute hearsay because it was not offered to prove the truth of any out of court statements and should not have been excluded on those grounds. *See* Rule 801(c), SCRE. Blurton's counsel did not offer evidence that Mayfield represented himself to be a former Navy SEAL to prove Mayfield actually was one. In fact, it is undisputed that Mayfield was never a Navy SEAL. The evidence was offered, in part, to corroborate Blurton's testimony that Mayfield told him and he believed Mayfield was a former SEAL. Therefore, the evidence should not have been excluded as hearsay.

■ Nor was the testimony irrelevant. Essentially, the excluded testimony would have shown that it was common belief among Wal–Mart employees, fueled by Mayfield's own statements, that he was a former Navy SEAL. The fact that Mayfield told this falsehood about his past to others, and that they believed him, tended to corroborate Blurton's claimed

---

4. Rule 801(d)(2)(A) provides:

A statement is not hearsay if ... [t]he statement is offered against a party and is ... the party's own statement in either an individual or a representative capacity.

belief in the same falsehood. This would help explain why Blurton would believe Mayfield's claim that he worked for the CIA. Furthermore, the fact that it was common knowledge that Mayfield was a former SEAL lends credibility to Blurton's alleged belief that other members of management were aware of his purported CIA status and were cooperating with him in the "staged" robbery. Thus, the evidence shows Blurton's state of mind at the time he committed the crimes. The evidence was relevant to Blurton's argument that he lacked criminal intent, a necessary element of the charged crimes. *See State v. Ferguson*, 302 S.C. 269, 395 S.E.2d 182 (1990) (statutory crimes ordinarily include some elements of intent); *State v. Thrailkill*, 73 S.C. 314, 53 S.E. 482 (1906) (criminal intent is an essential element in every common law crime).

### D. Newspaper Articles

■ Blurton also offered two newspaper articles printed by Orangeburg's newspaper, *The Times and Democrat*.[5] In the first article, entitled "Never Give Up," the newspaper recounted Mayfield's fictional history as a Navy SEAL. Mayfield was quoted in the article describing the rigorous training and lessons he gained from his experience as a SEAL. The second article, printed after Mayfield's arrest, discussed the Wal-Mart robbery and, in retracting the prior article, stated that Mayfield had never been a Navy SEAL. The trial court held both articles inadmissible hearsay. We agree with Blurton that the articles should have been admitted.

The newspaper articles did not constitute hearsay because they were not offered for the truth of the statements contained in them, but to show Mayfield's ability to persuade and trick others. Because of the purpose for which they were offered, the articles clearly were not hearsay and were improperly excluded. *See Jackson*, 326 S.C. 289, 486 S.E.2d 750; Rule 801(c), SCRE.

---

5. Blurton subpoenaed a reporter from the newspaper to testify, but the reporter objected to being called as a witness, asserting a qualified privilege under the Shield Law. Therefore, the reporter was "unavailable" to testify in person.

## II. State's Closing Argument

Blurton also asserts the trial court erred in overruling his objection, denying his motion to strike and his motion for a mistrial when the assistant solicitor accused him of lying in his testimony.

During closing arguments, the assistant solicitor accused Blurton twice of lying based on a defense psychiatrist's admission that she "diagnosed him as suffering from malingering, which is the deliberate production of false symptoms for the purpose of secondary gain." Blurton objected and moved to strike, arguing it is improper to call the defendant a liar in closing arguments. The trial court responded by instructing the prosecutor to "Go ahead." At the close of the State's argument, Blurton moved for a mistrial, which the court denied.

Our supreme court has previously held it is improper to call a party a liar in closing argument. *See Major v. Alverson,* 183 S.C. 123, 190 S.E. 449 (1937). However, not all improper closing arguments require reversal. In criminal cases, "[a] new trial will not be granted unless the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Huggins,* 325 S.C. 103, 107 481 S.E.2d 114, 116 (1997). The propriety of the state's closing argument will be examined in light of the entire record. *State v. Nathari,* 303 S.C. 188, 399 S.E.2d 597 (Ct.App.1990).

While we agree that the assistant solicitor's comments were improper, they do not mandate reversal alone. However, the cumulative effect of this error, when coupled with the exclusion of the previously discussed evidence, warrants reversal. *Cf. State v. Johnson,* 334 S.C. 78, 93, 512 S.E.2d 795, 803 (1999) (citations omitted) ("cumulative error doctrine provides relief to a party when a combination of errors that are insignificant by themselves have the effect of preventing a party from receiving a fair trial and it requires the cumulative effect of the errors to affect the outcome of the trial"). The prosecutor accused Blurton of a recent fabrication, an accusation which could not have been seriously made if the trial court had properly admitted the taped telephone conversations between Blurton and Mayfield. In that regard, the closing

arguments served to exacerbate the error in excluding evidence critical to Blurton's defense.

## III. Jury Instructions

██ Blurton also argues the trial court erred in denying his request for a specific jury instruction and in issuing an improper instruction. We find no error.

██ The law to be charged is determined by the evidence presented at trial. *State v. Gourdine,* 322 S.C. 396, 472 S.E.2d 241 (1996). If the evidence supports a particular requested charge, the trial court commits reversible error by refusing to issue it. *State v. Burriss,* 334 S.C. 256, 513 S.E.2d 104 (1999).

In discussing jury instructions, Blurton requested an instruction on actual and apparent authority. The trial court declined the request and noted that it would, contrary to the request, instruct the jury that acting on the instructions of another is no defense. In its charge, the court stated:

> Now, I tell you, the law is, if one committed a criminal act it is no defense to show that it was done under the instructions or orders from another. Likewise, it is no defense to a criminal act if it be shown that it was done in partnership or cooperation with another person.

Blurton objected to the instruction. On appeal, Blurton argues the trial court erred in refusing the requested charge and in charging the jury as it did.

██ The trial court correctly refused the requested instruction. Actual and apparent authority are principles of agency law rather than criminal law. However, even if these concepts could be used as a defense to criminal charges, Blurton did not establish sufficient evidence to require the requested charge. There is no evidence Mayfield had actual authority, as a Wal–Mart assistant manager or as a governmental official, to authorize Blurton to commit any of the alleged crimes.

██ "Apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe the principal consents to have the act done on his behalf by the person purporting to act for him."

*Genovese v. Bergeron,* 327 S.C. 567, 575, 490 S.E.2d 608, 612 (Ct.App.1997). Blurton presented no evidence of Mayfield's apparent authority to permit these crimes. There was no evidence that either Wal–Mart or the CIA, acting as a principal, did any act which would have caused Blurton to believe Mayfield could authorize a real or "staged" robbery of the Wal–Mart store. Because the evidence did not require the requested charge, the court properly refused to issue it. *See Dalon v. Golden Lanes, Inc.,* 320 S.C. 534, 540, 466 S.E.2d 368, 372 (Ct.App.1996) (citations omitted) ("It is the trial court's function to charge the jury on the applicable law as raised by the pleadings and supported by the evidence. In order to warrant reversal for failure to give a requested charge, the refusal must be both erroneous and prejudicial.").

■ Furthermore, the court's charge that it is no defense that a person acted upon the instructions of, or in cooperation with, another person was proper. The instruction is a correct statement of the law and was triggered by Blurton's testimony that he took money from Wal–Mart with Mayfield's assistance and permission. *See State v. Hurt,* 212 S.C. 461, 48 S.E.2d 313 (1948) (it is no defense to a crime that others who are not on trial participated in the crime); 22 C.J.S. *Criminal Law* § 88 (1989) (Generally, the fact that one commits a crime on the advice or direction of another person is no defense to his commission of the crime.).

## IV. Directed Verdict

■ Finally, Blurton argues the trial court erred in denying his directed verdict motion on the grand larceny charge. Specifically, he argues that double jeopardy prevents his conviction for both armed robbery, for taking the customer's car keys, and grand larceny, for taking her car. Although Blurton moved for a directed verdict on the ground of insufficiency of the evidence after the State rested, he never argued to the trial court, as he does now, that he could not be convicted of both crimes. Because he failed to assert his double jeopardy argument at trial, the issue is not preserved for direct appeal. *See State v. Byram,* 326 S.C. 107, 485 S.E.2d 360 (1997) (party may not argue one ground at trial and another on appeal); *Medlock v. One 1985 Jeep Cherokee VIN 1JCWB7828FT129001,* 322 S.C. 127, 470 S.E.2d 373

(1996) (double jeopardy issue must be raised to the trial court to be preserved for appellate review).

## CONCLUSION

For the reasons discussed, Blurton's appealed convictions are reversed and his case is remanded for a new trial.

REVERSED AND REMANDED.

GOOLSBY and SHULER, JJ., concur.