725 S.E.2d 730

**The STATE, Respondent,**

v.

**Mahammed Ahamad ATIEH (a/k/a Mohammed A. Atieh), Appellant.**

No. 4966.

Court of Appeals of South Carolina.

Submitted March 1, 2012.

Decided April 25, 2012.

Rehearing Denied May 24, 2012.

642

J. Falkner Wilkes, of Greenville, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Harold M. Coombs, all of Columbia; and Solicitor W. Walter Wilkins, III, of Greenville, for Respondent.

KONDUROS, J.

Mahammed Ahamad Atieh[1] appeals his conviction for assault and battery of a high and aggravated nature (ABHAN) and assault with intent to commit third-degree criminal sexual conduct (CSC). We affirm in part and reverse in part.

## FACTS/PROCEDURAL HISTORY

Mahammed Ahamad Atieh owned two Subway stores in Easley, South Carolina. One of his employees (Victim) reported to the police that Atieh had touched her inappropriately on several occasions. A Pickens County grand jury indicted Atieh for ABHAN and assault with intent to commit third-degree CSC. During pretrial motions, Atieh moved to suppress the testimonies of four former employees concerning allegations of past inappropriate touching. He argued the testimonies involved prior bad acts and were inadmissible under Rule 404(b), SCRE. Atieh further argued the testimonies would have a prejudicial effect while offering no probative value.

In considering Atieh's motion to suppress, the court heard in camera testimony from Victim and the former employees. Victim testified Atieh had touched and squeezed her rear end, put his hand down her shirt, pressed against her when she was washing dishes and in the restaurant's cooler, and that he had put his hand inside the waistband of her pants. The first former employee (Employee 1) testified Atieh pressed against her in the cooler and while she washed dishes and would try to put his hand down her shirt. The second former employee

---

1. Atieh's name is spelled differently on each sentencing sheet, the record on appeal, and the briefs. The sentencing sheet for ABHAN lists his name as Mohammed A. Atieh, while the assault with intent to commit third-degree criminal sexual conduct sentencing sheet refers to him as Mahammed Ahamad Atieh. The record on appeal lists his name as Mahammed Ahamad Ateih (a/k/a Mohammed A. Atieh). Both briefs refer to him as Mahammed Ahamas Atieh.

(Employee 2) stated Atieh put his hands up her shirt near the cooler area. The third former employee (Employee 3) testified Atieh touched her rear end and placed his hand on her back, and she observed him press against another female employee as the employee washed dishes. The fourth former employee (Employee 4) testified of past inappropriate touching. She indicated Atieh had pressed against her while she washed dishes and in the cooler, put his hand down her shirt, and put his hand inside the waistband of her pants. The trial court found the testimonies relevant under Rule 404(b), SCRE, and noted the similarities in each witness's testimony as indicative of a common scheme or plan. The trial court also found the probative value of the former employees' testimonies substantially outweighed the prejudicial effect and ruled the testimonies admissible.

When the trial began, the State called Victim as its first witness. After Victim testified, the State began calling each of the four former employees to testify. Atieh did not make any contemporaneous objections to the testimony of the first three former employees. However, prior to Employee 4 being called, Atieh renewed his objection to her testimony, arguing it went beyond common scheme or plan and beyond what Victim alleged Atieh had done. The trial court ruled Employee 4's testimony admissible; however, it limited her testimony to events that fell within the common scheme or plan, and the trial court prohibited her from speculating on what Atieh's intent might have been regarding putting his hand in her pants. After the trial court ruled, Atieh renewed his objection to Employee 4's entire testimony being admitted.

After the State rested, Atieh moved for a directed verdict on the charge of assault with intent to commit third-degree CSC. He argued no testimony was introduced showing Atieh attempted a sexual battery because, under the statute, that offense requires an attempt to penetrate the victim's body. Atieh emphasized the fact that Victim testified Atieh's hand did not come near her vaginal area when he put his hand inside her waistband. The trial court denied the motion, finding the State presented "substantial circumstantial evidence which reasonably could tend to prove guilt, or from which guilt could be fairly and logically deduced . . . [and that it was] a jury question as to what the intent was." Atieh then

asked the trial court, "Judge, for the record, could I ask for a ruling on what evidence with any weight at all the court is saying there's some evidence that the jury could find?" The trial court stated, "The evidence for the intent is what is on the record of what's been testified to by [Victim]." The motion was again denied.

At the close of Atieh's case, he renewed his motion for a directed verdict on the charge of assault with intent to commit third-degree CSC. The trial court denied the motion. During the charge conference, the trial court indicated it would "charge that evidence of other bad acts is only to be used for ... the sole issue of credibility not any proof of guilt.... It'd only be, if they considered it at all, it would be common scheme and plan or intent or absence of mistake." Atieh did not object. After the trial court gave the jury charge, it inquired whether either attorney had any exceptions to it. Atieh stated, "No objections to the charge, Judge."

Ultimately, the jury convicted Atieh of ABHAN and assault with intent to commit third-degree CSC. The trial court sentenced Atieh to ten years' imprisonment suspended to forty-four months' imprisonment and four years of probation for each charge, to be served concurrently. This appeal followed.

## LAW/ANALYSIS

### I. Prior Bad Acts

Atieh contends the trial court committed reversible error in allowing testimony from four former employees alleging prior bad acts. He further argues the prejudice of this prior bad act evidence is so pervasive it requires a reversal on both convictions. We disagree.

A ruling in limine is not final; unless an objection is made at the time the evidence is offered and a final ruling procured, the issue is not preserved for review. *See State v. Wannamaker*, 346 S.C. 495, 499, 552 S.E.2d 284, 286 (2001). An exception to this rule is when the motion in limine is made "immediately prior to the introduction of the evidence in question." *State v. Forrester*, 343 S.C. 637, 642, 541 S.E.2d 837, 840 (2001). The South Carolina Supreme Court expanded

this exception in *State v. Wiles*, holding that even when the evidence does not immediately follow the motion in limine, if the trial court clearly indicates its ruling is final, rather than preliminary, the issue is preserved for appellate review. 383 S.C. 151, 157, 679 S.E.2d 172, 175 (2009). In *Wiles*, the trial court had commented to the jury about the evidence that was the subject of the motion in limine before any evidence was admitted. *Id.*

 Any issue regarding the first three former employees' testimonies is unpreserved. The exception in *Forrester* regarding motions in limine is not applicable in this case because the former employees were not called as witnesses immediately after the motion in limine. As to the exception in *Wiles*, nothing in the record indicates the trial court commented to the jury the State would present testimony by former employees. Furthermore, the preliminary nature of the motion in limine allowed the trial court to adjust its ruling in accordance with developments in the trial. Specifically, when Employee 4 was called, the trial court heard Atieh's objection and limited her testimony, thereby demonstrating the trial court's flexibility with the earlier ruling. As to the testimony of Employee 4, Atieh made a contemporaneous objection when she was called to testify before the jury. Thus, that issue is preserved for our consideration.

"The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Id.*

 Rule 404(b), SCRE, states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, *the existence of a common scheme or plan*, the absence of mistake or accident, or intent." (emphasis added).

> Rule 404(b) allows the admission of evidence of a common scheme or plan. Such evidence is relevant because proof of one is strong proof of the other. When determining whether evidence is admissible as common scheme or plan, the

trial court must analyze the similarities and dissimilarities between the crime charged and the bad act evidence to determine whether there is a close degree of similarity. When the similarities outweigh the dissimilarities, the bad act evidence is admissible under Rule 404(b). Although not a complete list, in this type of case, the trial court should consider the following factors when determining whether there is a close degree of similarity between the bad act and the crime charged: (1) the age of the victims when the abuse occurred; (2) the relationship between the victims and the perpetrator; (3) the location where the abuse occurred; (4) the use of coercion or threats; and (5) the manner of the occurrence, for example, the type of sexual battery.

*State v. Wallace*, 384 S.C. 428, 433–34, 683 S.E.2d 275, 277–78 (2009) (citations omitted). After determining evidence supports a finding the defendant committed a prior bad act, the court must determine whether the evidence falls within the common scheme or plan exception. *State v. Tutton*, 354 S.C. 319, 326, 580 S.E.2d 186, 190 (Ct.App.2003). This determination is a matter of law. *Id.* at 326–27, 580 S.E.2d at 190.

Under the factors delineated in *Wallace*, we agree with the trial court that Employee 4's testimony was admissible under the common scheme or plan exception. Victim and Employee 4 were both young women, aged 16 and 17 to 18 respectively, when the inappropriate touching occurred. They were both employees of Atieh and the inappropriate touching took place at the restaurant primarily around the sink or cooler. There was no direct coercion or threat in either case, although both Victim and Employee 4 were subordinate employees. The specific instances of touching in both cases included Atieh pressing against Victim and Employee 4, touching their rear ends, putting his hand up or down their shirts, and putting his hand inside the waistband of their pants. The similarities of both women's testimonies far outweigh the differences, increasing the probative value of Employee 4's testimony.

However, even if prior bad act evidence is clear and convincing and falls within an exception, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. *Pagan*, 369 S.C. at 211, 631

S.E.2d at 267. "To show prejudice, there must be a reasonable probability that the jury's verdict was influenced by the challenged evidence or the lack thereof." *State v. Martucci*, 380 S.C. 232, 248, 669 S.E.2d 598, 606 (Ct.App.2008).

In ruling on Atieh's objection, the trial court limited Employee 4's testimony to matters that would aid in establishing a common scheme or plan, allowing no speculation on what Atieh's intent might have been in putting his hand in the waistband of her pants. The trial court instructed the jury it could not consider evidence of bad acts for any reason other than intent, common scheme or plan, or absence of mistake. It specifically cautioned the jury against considering the testimony as proof of Atieh's guilt. The trial court took all precautions to reduce any prejudice Employee 4's testimony may have created and Atieh has shown no clear evidence Employee 4's testimony improperly influenced the jury's verdict. Therefore, we find the trial court did not abuse its discretion in admitting Employee 4's testimony.

## II. Directed Verdict

Atieh argues the trial court committed reversible error in refusing to grant his motion for a directed verdict on the charge of assault with intent to commit third-degree CSC. We agree.

"When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight." *State v. Weston*, 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006). "A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged." *Id.* "When reviewing a denial of a directed verdict, [the appellate court] views the evidence and all reasonable inferences in the light most favorable to the [S]tate." *Id.*

Section 16–3–656 of the South Carolina Code (2003) states "[a]ssault with intent to commit [CSC] ... shall be punishable as if the criminal sexual conduct was committed." To be guilty of third-degree CSC, the defendant must have engaged in sexual battery with the victim. S.C.Code Ann. § 16–3–654 (2003). Sexual battery is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, howev-

er slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, except when such intrusion is accomplished for medically recognized treatment or diagnostic purposes." S.C.Code Ann. § 16–3–651(h) (2003).

"Intent is a question of fact and is ordinarily for jury determination." *State v. Lee–Grigg*, 374 S.C. 388, 403, 649 S.E.2d 41, 49 (Ct.App.2007) (citing *State v. Tuckness*, 257 S.C. 295, 299, 185 S.E.2d 607, 607 (1971)). "Intent may be shown by acts and conduct from which a jury may naturally and reasonably infer intent." *Id.* "In the context of an attempt crime, specific intent means that the defendant consciously intended the completion of acts compromising the choate offense. In other words, the completion of such acts is the defendant's purpose." *State v. Sutton*, 340 S.C. 393, 397, 532 S.E.2d 283, 285 (2000).

While intent can be inferred from conduct, Victim's testimony does not raise the inference that Atieh intended to commit the conduct required to establish third-degree CSC. On direct examination, Victim testified as follows:

Q. Okay. And at any time did he ever attempt to put his hands down your pants?

A. Yes, sir.

Q. And when was that? Can you explain—

A. While I was washing dishes.

Q. Can you explain to the jury what happened then?

A. I was standing towards the sink, I was washing dishes, and he came up behind me and kind of pressed his body up against me. And he put his hands down the front of my pants, not all the way, just at the waistline.

Q. Okay. Now, what was your response to that?

A. I was in shock. I was just standing there. I didn't know what to do.

On cross-examination she testified:

Q. How far down your pants did his hands go?

A. Just barely below the waistline?

Q. Just barely below the waistline?

A. Yes, sir.

Q. Did it come anywhere near your vaginal area?

A. No, sir.

Victim's testimony does not indicate she did anything to disrupt whatever Atieh intended to do. She stated she was in shock and just standing there. She did not testify to some outside force interrupting or prematurely halting his actions. The only evidence is that Atieh put his hand just inside the waistline of Victim's pants and then withdrew it. This action was consistent with inappropriately touching Victim but does not, under the specific circumstances and testimony in this case, give rise to an inference he intended to do more than what he did. While this conduct constitutes an assault, a jury could not "reasonably and naturally" infer that Atieh intended to penetrate any orifice of Victim's body. Consequently, the trial court erred in denying Atieh's directed verdict motion as to the charge of assault with intent to commit third-degree CSC.

## CONCLUSION

Any issue regarding the admissibility of Employee 1, 2, or 3's testimonies is not preserved for our review. Further, the trial court did not abuse its discretion in admitting Employee 4's testimony under the common scheme or plan exception to admission of prior bad acts. With respect to Atieh's conviction for assault and battery with intent to commit third-degree CSC, we conclude the trial court erred in denying Atieh's motion for directed verdict as the State presented no evidence from which the jury could have reasonably and naturally inferred his intent to commit the underlying offense as specified in the statute.

**AFFIRMED IN PART and REVERSED IN PART.**