# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Isaiah Gadson, Jr., Appellant.

Appellate Case No. 2018-001041

---

Appeal From Beaufort County
Brooks P. Goldsmith, Circuit Court Judge

---

Opinion No. 5979
Heard November 10, 2021 – Filed April 19, 2023

---

### AFFIRMED

---

Chief Appellate Defender Robert Michael Dudek and
Appellate Defender Taylor Davis Gilliam, both of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy
Attorney General W. Jeffrey Young, Deputy Attorney
General Donald J. Zelenka, Senior Assistant Deputy
Attorney General Melody Jane Brown, Assistant
Attorney General Mark Reynolds Farthing, and Assistant
Attorney General William Joseph Maye, all of Columbia,
and Solicitor Isaac McDuffie Stone, III, of Bluffton, all
for Respondent.

---

**MCDONALD, J.:**  Isaiah Gadson, Jr. appeals his 2018 convictions for murder,
first degree criminal sexual conduct (CSC), kidnapping, and armed robbery arising

from a 1980 incident, arguing the circuit court erred in admitting evidence of his 1983 rape of a different victim (Victim 2).  We affirm the convictions.

Gadson's 2018 convictions arose from a cold case investigation of the 1980 rape of Victim and the murder of her boyfriend.  In 1999, the Beaufort County Sheriff's Office (BCSO) reopened the investigation as part of a newly created cold case task force.  Captain Bob Bromage conducted the investigation; he reviewed the evidence, re-interviewed witnesses, and returned items to the South Carolina Law Enforcement Division (SLED) for retesting.  SLED was unable to establish a DNA profile in 1999 due to the limited DNA technology available at the time.

In 2002, Captain Bromage sent the evidence back to SLED for additional testing.  Due to improvements in technology, a SLED examiner was able to develop a DNA profile from semen found on Victim's underwear.  As a result of the DNA profile, Captain Bromage eliminated a person of interest who was not a match.  It was further determined that Victim's deceased boyfriend was not a match.

In 2016, SLED notified Captain Bromage that it had received notification of a match to the DNA profile in Victim's case from CODIS, the national DNA indexing system.  The BCSO then returned the evidence to SLED for testing along with buccal swabs taken from Gadson.  DNA technical leader Laura Hash examined Gadson's buccal swabs and compared them to the DNA profile from the semen previously found on Victim's underwear and pants.  Gadson was a match to the DNA profile of the semen.

Prior to Gadson's 2018 trial, the State filed a motion under Rule 404(b), SCRE, seeking to introduce evidence of a 1983 sexual assault Gadson committed against Victim 2.  The State argued Gadson's conduct in the 1983 attack satisfied Rule 404(b)'s exception permitting introduction of "other crimes, wrongs, or acts" when such evidence is offered to "show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent."[1]  During pretrial proceedings, the circuit court heard arguments on the State's 404(b) motion, and the State proffered testimony from both Victim 2 and Captain Bromage.  The circuit court found evidence of the 1983 assault was admissible because the similarities of the sexual assaults and Gadson's behavior toward each victim

---

[1] Gadson was indicted for first degree CSC following the 1983 attack on Victim 2 and pled nolo contendere to assault and battery of a high and aggravated nature (ABHAN).  The State sought only to introduce the underlying conduct from the 1983 assault that gave rise to Gadson's plea.

outweighed the dissimilarities and the probative value of the evidence outweighed its prejudicial effect.

At trial, Gadson did not contemporaneously object to Victim 2's testimony about the 1983 assault, and the testimony did not occur immediately following the circuit court's ruling on the pretrial motion. Therefore, we find the question of whether evidence of the 1983 assault of Victim 2 was properly admitted in the current case is not preserved for our review. *See State v. Atieh*, 397 S.C. 641, 646, 725 S.E.2d 730, 733 (Ct. App. 2012) ("A ruling in limine is not final; unless an objection is made at the time the evidence is offered and a final ruling procured, the issue is not preserved for review."); *State v. Smith*, 337 S.C. 27, 32, 522 S.E.2d 598, 600 (1999) ("A pretrial ruling on the admissibility of evidence is preliminary and is subject to change based on developments at trial."); *id.* (holding the issue of the admissibility of the defendant's prior conviction was not preserved when the circuit court ruled it was admissible during pretrial proceedings and the defendant failed to object to the State's questions about the conviction at trial).

However, if this question were preserved, we would find the circuit court acted within its discretion in admitting evidence of the 1983 sexual assault under Rule 404(b), SCRE because Victim 2's testimony was relevant to establish Gadson's identity as the perpetrator of Victim's attack as well as his modus operandi. *See State v. Clasby*, 385 S.C. 148, 154, 682 S.E.2d 892, 895 (2009) ("The trial judge has considerable latitude in ruling on the admissibility of evidence and his decision should not be disturbed absent prejudicial abuse of discretion."). Both victims were young, white, tall, and slender females. Both victims were sexually assaulted on dark dirt roads in the same Lowcountry community. In both sexual assaults, Gadson performed oral sex on the victims before vaginally raping them. Victim was raped at gunpoint after her boyfriend was shot, and in perpetrating Victim 2's sexual assault, Gadson twice threatened to "blow her brains out."

Other—more unique—characteristics of the separate sexual assaults support admissibility: (1) Gadson apologized to Victim 2 after he raped her; Victim testified her assailant also apologized to her and (2) after raping Victim 2, Gadson asked her if she enjoyed it; similarly, someone, whom Victim believed to be Gadson, called Victim a few months after her sexual assault and asked her if she was the girl who was raped and whether she enjoyed it. Finally, in his statement to law enforcement in the 1983 case, Gadson told officers he grew up on Glaze Drive in the Burton area of northern Beaufort County; Glaze Drive is less than two miles from the isolated location of Victim's 1980 attack.

We find these facts establish the necessary "logical connection" between the two sexual assaults for admissibility purposes. *See e.g.*, *State v. Perry*, 430 S.C. 24, 41, 842 S.E.2d 654, 663 (2020) (holding that to meet the "logical connection" standard for admission of other crimes under Rule 404(b), "[t]here must be something in the defendant's criminal process that logically connects the 'other crimes' to the crime charged"); *see also State v. Cotton*, 430 S.C. 112, 113, 844 S.E.2d 56, 57 (2020) (reconfirming "the continued viability of the common scheme or plan exception"); *Perry*, 430 S.C. at 72, 842 S.E.2d at 679–80 (2020) (Kittredge, J., dissenting) (noting "the hallmark of the common scheme or plan exception is that the charged and uncharged crimes are connected in the mind of the actor by some common purpose or motive" and recognizing that with the *modus operandi* exception, "identity is interwoven with common scheme or plan").

Additionally, we find the circuit court acted within its discretion in balancing the probative value of the evidence of the 1983 attack with its prejudicial effect for Rule 403 purposes. *See State v. Brooks*, 428 S.C. 618, 635, 837 S.E.2d 236, 245 (Ct. App. 2019) (reiterating that an "appellate court reviews the circuit court's Rule 403 ruling 'pursuant to the abuse of discretion standard'" and a "decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances" (quoting *State v. Collins*, 409 S.C. 524, 534, 763 S.E.2d 22, 28 (2014))).

Accordingly, Gadson's convictions are

**AFFIRMED.**

**WILLIAMS, C.J., and LOCKEMY, A.J., concur.**